WINTHROP A. CHANLER, Respondent, *v.* THE NEW YORK ELEVATED RAILROAD COMPANY and THE MANHATTAN RAILWAY COMPANY, Appellants.

*Will — an absolute power of sale is not limited by the suggestion of a time for its exercise — effect of the time of its exercise not being limited by lives — its exercise postponed for the convenience of the estate — legacies vested, although not bequeathed by direct gift — equitable relief to an abutting owner who has conveyed and afterwards regains the title.*

Where an absolute power of sale is conferred upon an executor, the addition of words suggesting a time for its exercise or indicating the testator's desire in that regard do not restrain or limit the action of the executor.

The fact than an executor may require, in order to make a sale under such a power, a period of time not measured by lives in being, does not suspend the power of alienation; and, in such a case, a trust to receive the rents and profits pending the sale for the benefit of beneficiaries is not illegal.

Where the postponement of the distribution of an estate is for the convenience of the estate to enable the executors advantageously to convert the property, and the rents, income and profits accruing between the time of the testator's death and the time of distribution are given to the several legatees, to be paid semi-annually, in proportion to their interests in the *corpus* of the fund, the presumption against the vesting of the legacies arising from the fact that there is no direct gift, but only a direction to pay over at a future time, is rebutted.

Under the provisions of a will by which separate funds are created out of the proceeds of sale of the real estate left by the testator and are directed to be set apart and held for the benefit of certain persons who are respectively to receive the income from the respective funds until the time of actual distribution, the title to the fund set apart for any beneficiary vests at once.

An owner of property, abutting upon a street upon which an elevated railroad
has been constructed, who conveys it, loses his right to equitable relief, and the
railroad company, defendant in an action brought by such owner for an injunc-
tion and damages because of the construction of the railroad, is entitled to a
jury trial of the question of past damages, but when the owner regains his
title to the property he regains also his right to have all the questions presented
by such action settled by a court of equity.

A cause of action which equity will enforce as an incident to equitable relief
need not necessarily be one which has been such an incident throughout.

The proof, as to the actual rents received from such property, which is sufficient
to justify a recovery, considered; and here held to be insufficient.

APPEAL by the defendants, The New York Elevated Railroad
Company and another, from a judgment of the Supreme Court in
favor of the plaintiff, entered in the office of the clerk of the county
of New York on the 11th day of February, 1898, upon the decision
of the court rendered after a trial at the New York Special Term.

*William H. Godden,* for the appellants.

*Charles H. Strong,* for the respondent.

BARRETT, J.:

This is the usual action for an injunction and damages, the prop-
erties affected being Nos. 358, 419 and 428 Third avenue. The first
point raised by the defendants is, that the plaintiff did not prove a
good title to No. 358. Maria Adams died seized of this property in
1881, and her executor conveyed it to the plaintiff in 1885. By the
5th clause of her will the testatrix devised and bequeathed her
residuary estate, which included this property, to her executor in
trust to collect the rents and profits until a sale, and distribute them
among five individuals named. The will then reads, " And upon
the further trust to sell and dispose of said real estate as soon as he
can sell and dispose of the same to advantage and best interest of
my estate, but it is my desire that the real estate remain unsold
until the expiration of five years after my decease unless in the
opinion of my executor hereinafter named my estate will be bene-
fited by an earlier sale, and in trust further upon the sale of said
real estate to pay one-fifth part of the net proceeds to Mary E.
Adams, in case I shall continue to live with her and be taken care
of by her until my decease, one-fifth part to Aaron Adams, in
trust further to invest the other three-fifths of the net proceeds in

lawful securities, one of said three-fifths for the benefit of my said son, another of said three-fifths for the benefit of my said daughter, and the other of said three-fifths for the benefit of my said granddaughter. The principal so invested for my son and daughter is to be paid to them in ten equal annual installments, together with the net income thereon or the unpaid installments thereof as often as annually. The principal of the share of my granddaughter is to be paid to her when she is twenty-one. The income thereof at that time is to be paid to her or her mother for her as often as annually," etc. The recipients of the proceeds were the same persons to whom the income was to be paid pending sales. It is said that these provisions illegally suspend the power of alienation.

It is well settled that where an absolute power of sale is conferred upon an executor, the addition of words suggesting a time for its exercise, or indicating the testator's desire in that regard, do not restrain or limit the action of the executor. (*Deegan* v. *Wade*, 144 N. Y. 573; *Robert* v. *Corning*, 89 id. 225; *Henderson* v. *Henderson*, 113 id. 1.) This rule has been applied to words much more peremptory than those in the case at bar. (*Deegan* v. *Wade*, *supra*.) The fact that an executor may require, in order to make a sale, a period of time not measured by lives in being, does not suspend the power of alienation; and in such a case a trust to receive the rents and profits pending sale for the benefit of beneficiaries is not illegal. (*Robert* v. *Corning*, *supra*.)

But it is said that the disposition of part, at least, of the proceeds of sale was illegal, and invalidated the power conferred upon the executor. Without considering the latter question, we think it clear that the disposition of the proceeds was valid. The facts as to the first two-fifths are precisely like those in *Robert* v. *Corning*, where it was said: " The postponement of the distribution, which was contemplated, was for the convenience of the estate to enable the executors advantageously to convert the property, and the rents, income and profits which might accrue between the time of the testator's death and the time of distribution were given to the several legatees to be paid semi-annually, in proportion to their interests in the *corpus* of the fund. These circumstances are regarded as rebutting the presumption against the vesting of legacies, arising from the fact that there is no direct gift, but only a direction to pay over

at a future time. The postponement of the payment, where it is made for the convenience of the estate, is consistent with the vesting of the legacies, and the gift of the intermediate income indicates an intention to vest the *corpus* from which the income is to be derived." (89 N. Y. 240, 241.)

Aaron and Mary Adams thus obtained vested interests. We think the same is true of the testator's son, daughter and granddaughter. In this case, as in the other, the intention to convey a vested interest is shown by the gift of the income. The actual payment is postponed for a longer period, and this postponement is not for convenience of distribution. But three separate funds are created out of the proceeds of sale, which are to be set apart and held for the benefit of these three persons, and of which they are to receive the income until the actual distribution. Where a fund is thus created and devoted to the use of the beneficiary his title vests at once. (*Warner* v. *Durant*, 76 N. Y. 133.) The rules cited show, in conjunction, that the beneficiaries obtained a vested interest from the date of the death of the testatrix.

It is next said that the defendants were entitled to a jury trial of the question of the rental damage sustained by No. 419 Third avenue prior to March 12, 1891. It appears that on this date, which was subsequent to the bringing of the suit, the plaintiff conveyed the premises to one Simonson, who placed a mortgage thereon and on the same day reconveyed them to the plaintiff, who has ever since been the owner thereof. It is evident that the transfer was merely nominal and without consideration and that the reconveyance was practically simultaneous, but we shall treat the case as though the sale were a *bona fide* one and the vendee had been in possession for an appreciable period. It has been held that where the owner of property conveys it, he loses his right to equitable relief and the defendant becomes entitled to a jury trial of the question of past damage. (*Saxton* v. *N. Y. Elevated R. R. Co.*, 12 App. Div. 263; *Hutton* v. *Met. Elevated R. Co.*, 19 id. 243.) But it has never been held that the original owner does not regain his right to have the whole question settled by a court of equity when he regains his title to the property. It is said that the right to equitable relief once lost can never be regained, but neither reason nor authority is given in support of such a view. It has often been held that equity

adapts its relief to the state of facts appearing upon the trial, and we see no reason for refusing to apply that rule to a case like the present.

It is said that the cause of action which equity will enforce as an incident to equitable relief must be one which has been such an incident throughout. But this is not so. In the case of *Hunter* v. *M. R. Co.* (141 N. Y. 281) the plaintiff was originally a tenant in common of the land, but before bringing suit she bought the interests of her co-tenants and obtained an assignment of their claims for past damages. She was permitted to recover in full in equity. The court said : " When the plaintiff brought her action she represented in her person every interest in the property, and if she were found and should be adjudged to be entitled to the equitable relief she demanded, in the exercise of the jurisdiction which it had acquired over the action, the court would have the right to assess the damages down to the time of trial. * * * If they, as matter of fact and of law, then belonged to the plaintiff, of what consequence is it that they were not, during all the time for which they were awarded, hers to recover ? " Plainly the causes of action for past damages there assigned to the plaintiff were never an incident to her title, for at the time they accrued she did not own the whole property and they did not vest in her by virtue of her subsequent purchase. If equity will enforce a cause of action for rental damage which was *never* incident to the right of ownership, certainly it may enforce one which was originally thus incident, but which ceased to be so temporarily by reason of the conveyance of the property. We think the true rule is that, where the plaintiff is the full owner, equity will enforce any cause of action in the premises, legal or equitable, which was vested in him when he brought his suit.

We have carefully examined the evidence on which the awards are based. Most of them are amply sustained. We do not, however, find sufficient evidence of rental damage to No. 419. There is no evidence in the case from which it can be determined what rent was received for the property in any year prior to 1894. The only witness on the subject is Mrs. Carroll. She and her husband moved into the premises in July, 1877, when the building was just completed. She testifies that tenants followed rapidly, and gives the amounts received for certain of the rooms. She makes no attempt, however, to tell how much of the building was occupied.

She testifies that the rent was "reduced some" when she left in 1885, and says: "I guess it was about $17 for the apartments adjoining mine, the front; it was as much as that anyway. It was one dollar less as you went up to the top." She adds that she cannot tell the time of the reduction. It is quite impossible to ascertain from this evidence how much was received from the building in 1877 or any subsequent year, or what the gross reduction was, or when that reduction was made. It may have been long after the building of the road; and, in fact, the testimony seems to show that it was at least two years thereafter. From the time Mrs. Carroll left there is no evidence at all as to the rents received down to 1894. We are informed what the two stores brought in 1894 and 1895, and that the whole premises rented for $2,500 in 1897. But there is nothing with which to compare these figures. We know of no case where an award has been allowed to stand upon such proof. The plaintiff must show a loss of rents due to the presence of the road or a failure to realize as great a sum as he would have but for this cause. But here the evidence does not either show a loss or negative a proper gain. The fundamental basis of the claim is unproven. The defect is not supplied by the opinion of the plaintiff's expert that the rental value of the stores was $900 a year in 1877. This opinion cannot take the place of the actual fact as to what the rent was. This fact was simple and capable of direct proof, and opinion evidence as to what should have been realized cannot be taken as a substitute.

The evidence of diminution of the fee value of No. 419 is not very satisfactory, but on the whole we think it was sufficient to support the award.

The judgment should be modified by deducting the sum of $3,379.42, the amount awarded as rental damage to No. 419 Third avenue, and as thus modified affirmed, without costs of this appeal to either party.

VAN BRUNT, P. J., RUMSEY, INGRAHAM and McLAUGHLIN, JJ., concurred.

Judgment modified by deducting therefrom $3,379.42, amount awarded as rental damage to No. 419 Third avenue, and as thus modified affirmed, without costs.