Horace Russell and Edward D. Harris, as Executors of and Trustees under the Last Will and Testament of Henry Hilton, Deceased, Appellants and Respondents, *v.* Edward B. Hilton and Others, Respondents, Impleaded with Albert B. Hilton, Appellant, and Helen Hilton and Others, Respondents and Appellants, and Others, Defendants.

*Will — an imperative direction to sell converts the real estate into personalty and trusts in respect thereto are trusts of personalty — when a direction to sell and distribute creates a trust, not a power — executors empowered to sell are entitled to the rents of the real property to be sold — legacies which draw interest only from the end of one year — legacies as distinct from shares in the residuary estate — beneficiary authorized to use the principal of the fund — she may be considered a trustee for the remainderman — the income of a residuary share left in trust held to go to the executors — application of the income to the use of the beneficiary or to that of his family — income not required by the beneficiary goes to his wife or children — a trust fund which the executors have elected to pay over to the beneficiary does not go to her administrator — the power of executors to employ one of themselves as agent not considered in an action for the construction of the will.*

The will of Henry Hilton provided as follows: "All my property and estate of every kind and description, and wheresoever situate, I hereby give, devise and bequeath to my Executors hereinafter named,

"In trust, to take the custody and possession thereof and sell and dispose of the same at such times and in such manner as they shall deem fit or proper, and convert the same into money, and pay over and distribute the same as follows, viz.:

"*First.* To pay to my daughter, Cornelia H. Hughes, the sum of Fifty thousand dollars.

"*Second.* To pay to my daughter, Josephine H. Russell, the sum of Fifty thousand dollars.

"*Third.* To pay to my son, Edward B. Hilton, the sum of Fifty thousand dollars.

"*Fourth.* To pay to my son, Albert B. Hilton, the sum of Fifty thousand dollars.

"*Fifth.* To pay to each of my grandchildren, living at my death, the sum of Ten thousand dollars.

"*Sixth.* To pay to my brother, James Hilton, of Iowa, the sum of Five thousand dollars.

"*Seventh.* To pay to my sister, Mary Ann Brown, the sum of Five thousand dollars.

"*Eighth.* To pay to my sister, Eliza Hilton, the sum of Ten thousand dollars.

"*Ninth.* My Executors are hereby authorized in their discretion to set apart out of my estate, the sum of Twenty-five thousand dollars, out of which they may from time to time, as they may see fit, pay to or for the use of my son Henry G. Hilton, and his wife Agnes S., or to or for the use of either of them, such sums and amounts as my Executors shall see fit, or shall consider proper or expedient.

"All the rest, residue and remainder of my property and estate shall be divided into Twelve equal parts, which shall be paid over and distributed as follows, viz.:

"I. To my daughter, Cornelia H. Hughes, Two equal twelfth parts thereof.

"II. To my son, Edward B. Hilton, Two equal twelfth parts thereof.

"III. To my daughter, Josephine H. Russell, Four equal twelfth parts thereof.

"IV. To my son, Albert B. Hilton, Four equal twelfth parts thereof.

"All the shares, legacies and bequests shall be paid personally to the party entitled thereto, except as herein otherwise provided.

"Those to my grandchildren shall be paid personally and jointly with the mother where the child is over sixteen and under twenty-one years of age.

"To those under sixteen, to the general guardian.

"To those over twenty-one, personally.

"The share and interest herein of my daughter, Cornelia H. Hughes, shall be incapable of being sold, assigned or transferred.  On her death, leaving her son Henry H. Hughes surviving, her share and interest then remaining therein shall be paid over and belong to said Henry H. Hughes.  But if she shall survive her said son then on her death any part of her share then remaining shall be paid over to and shall belong to the children then living of my daughter Josephine and the children of my son Albert then living, in equal shares and proportions.

"The share and interest herein of my son Albert B.* shall also be incapable of being sold, assigned or transferred; and upon his death leaving his wife Dorothy and their children or either of them surviving, the part then remaining unpaid of his share shall belong to and shall be paid over to his. said wife and their children, or such of them as shall then be living, in equal shares and proportions.

"Further, my Executors are authorized and empowered, in their discretion, during the life of the said Edward B. to pay over not exceeding two-thirds of his share to his said wife Dorothy.

"The share and interest herein of my son Albert B. Hilton shall also be incapable of being sold, assigned or transferred, or in any manner controlled by him; and as to which I fully authorize and empower my Executors to retain and withhold the same.

"IN TRUST, to pay out or pay over or apply so much and such parts thereof as they may from time to time consider necessary, proper or expedient for the support and maintenance of the said Albert and his wife and children during

---

*Sic* in "case."   Apparently should be "Edward B."— [REP.

his life; and on his death to pay over and distribute such part of his share as shall be then remaining in the hands of my Executors to his wife, Hattie K., and their children, or to such of them as shall be then living, in equal shares and proportions, share and share alike.

"Prior to the sale and disposition of my estate my Executors are authorized and empowered to lease or let the same, or any part thereof, for such terms as they shall see fit;     *     *     *

"My Executors and Trustees are authorized to employ such assistants, clerks, agents, &c., in the care and management of my estate as they may consider necessary or proper, and the expense thereof, salaries, &c., shall be charged against my estate."

In an action brought to obtain a judicial construction of the will, it was

*Held,* that, as the direction to sell the testator's real estate was imperative, no discretion being left in the executors, except as to the time of sale, the will was to be regarded as one of personal property only;   ·

That the direction to the executors to sell and convert 'the real estate into money and to pay over and distribute the proceeds as directed by the will, created a valid express trust to sell land for the benefit of legatees under subdivision 2 of section 55 of the Statute of Uses and Trusts (1 R. S. 728) and not a mere power in trust;

, That the trusts created by the will were to be considered as trusts of personal property;

That the authority given to the executors prior to the sale and disposition of the testator's estate "to lease or let the same or any part thereof for such terms as they shall see fit," impliedly authorized them to take the rents and profits of the real estate until a sale should be made;

That the specific legacies bequeathed in the 1st to the 9th clauses of the first branch of the will did not begin to draw interest until one year after the granting of letters testamentary; that they were absolute gifts of money payable directly to the persons named and were to be entirely separated from the gifts of the residuary estate mentioned in the subsequent part of the will;

That the specific legacies given by the 1st, 3d and 4th clauses of such will to Cornelia H. Hughes, Edward B. Hilton and Albert B. Hilton were not to be deemed a part of the shares of the testator's residuary estate given to such persons by the second branch of the will or to be "subject to the limitations placed upon each such share and interest;"

That no trust as to Cornelia H. Hughes was created in the two-twelfths share of the residuary estate intended for her benefit, and that the testator contemplated that she might not only use the income of such share, but might draw upon the principal thereof;

That at most Mrs. Hughes would become a trustee for the remainderman in such portion of the two-twelfths share as was not expended by her;

That with respect to the share of the residuary estate given to the executors in trust for the benefit of the testator's son Albert, and his wife and children, the executors were, by virtue of their ownership of such share, entitled to receive the income thereof;

That they were not confined to paying over either the principal or income of the share to Albert or his family, but might pay out and apply it not only for his support and maintenance, but for that of his wife and children, and that these applications of the share were to be made as to the executors might seem necessary, proper and expedient;

That if, for any reason, the executors should not deem it necessary, proper or expedient to pay over or apply the whole income of the estate for the support and maintenance of Albert himself, his wife and children would be entitled to the unapplied balance, as the persons presumptively entitled to the next eventual estate;

That, as it appeared that the executors had notified Agnes S. Hilton that they had elected to appoint her the sole beneficiary of the $25,000 fund mentioned in the 9th clause of the first branch of the will, and that there remained in the hands of the executors at the time of her death a balance of $20,329, her administrator was not entitled to receive such balance, but that it became part of the testator's residuary estate;

That the question whether the executors were empowered to employ and pay one of their number as an agent of the estate could not be determined in this action, as it did not legitimately relate to the construction of the will.

CROSS-APPEALS by the plaintiffs, Horace Russell and Edward D. Harris, as executors of and trustees under the last will and testament of Henry Hilton, deceased, and by the defendants, Helen Hilton and others, from portions of a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 27th day of May, 1902, upon the decision of the court, rendered after a trial at the New York Special Term, giving construction to various portions of the last will and testament of Henry Hilton, deceased.

Also an appeal by the defendant Albert B. Hilton from the whole of said judgment.

The will is as follows:

" IN THE NAME OF GOD, AMEN :

" I, HENRY HILTON, of the City of New York, being of sound and disposing mind and memory,

" Do make, publish and declare this my Last Will and Testament as follows, viz. :

" All my property and estate of every kind and description, and wheresoever situate, I hereby give, devise and bequeath to my Executors hereinafter named,

" In trust, to take the custody and possession thereof and sell and dispose of the same at such times and in such manner as they

shall deem fit or proper, and convert the same into money, and pay over and distribute the same as follows, viz. :

" *First.* To pay to my daughter, Cornelia H. Hughes, the sum of Fifty thousand dollars.

" *Second.* To pay to my daughter, Josephine H. Russell, the sum of Fifty thousand dollars.

" *Third.* To pay to my son, Edward B. Hilton, the sum of Fifty thousand dollars.

" *Fourth.* To pay to my son, Albert B. Hilton, the sum of Fifty thousand dollars.

" *Fifth.* To pay to each of my grandchildren living at my death, the sum of Ten thousand dollars.

" *Sixth.* To pay to my brother, James Hilton, of Iowa, the sum of Five thousand dollars.

" *Seventh.* To pay to my sister, Mary Ann Brown, the sum of Five thousand dollars.

" *Eighth.* To pay to my sister, Eliza Hilton, the sum of Ten thousand dollars.

"*Ninth.* My Executors are hereby authorized in their discretion to set apart out of my estate, the sum of Twenty-five thousand dollars, out of which they may from time to time, as they may see fit, pay to or for the use of my son Henry G. Hilton, and his wife Agnes S., or to or for the use of either of them, such sums and amounts as my Executors shall see fit, or shall consider proper or expedient.

" All the rest, residue and remainder of my property and estate shall be divided into Twelve equal parts, which shall be paid over and distributed as follows, viz. :

" I. To my daughter, Cornelia H. Hughes, Two equal twelfth parts thereof.

" II. To my son, Edward B. Hilton, Two equal twelfth parts thereof.

" III. To my daughter, Josephine H. Russell, Four equal twelfth parts thereof.

" IV. To my son, Albert B. Hilton, Four equal twelfth parts thereof.

" All the shares, legacies and bequests shall be paid personally to the party entitled thereto, except as herein otherwise provided.

" Those to my grandchildren shall be paid personally and jointly with the mother where the child is over sixteen and under twenty-one years of age.

" To those under sixteen, to the general guardian.

" To those over twenty-one, personally.

" The share and interest herein of my daughter, Cornelia H. Hughes, shall be incapable of being sold, assigned or transferred. On her death, leaving her son Henry H. Hughes surviving, her share and interest then remaining therein shall be paid over and belong to said Henry H. Hughes. But if she shall survive her said son then on her death any part of her share then remaining shall be paid over to and shall belong to the children then living of my daughter Josephine and the children of my son Albert then living, in equal shares and proportions.

" The share and interest herein of my son Albert B.* shall also be incapable of being sold, assigned or transferred; and upon his death leaving his wife Dorothy and their children or either of them surviving, the part then remaining unpaid of his share shall belong to and shall be paid over to his said wife and their children, or such of them as shall then be living, in equal shares and proportions.

" Further, my Executors are authorized and empowered, in their discretion, during the life of the said Edward B. to pay over not exceeding two-thirds of his share to his said wife Dorothy.

" The share and interest herein of my son Albert B. Hilton shall also be incapable of being sold, assigned or transferred, or in any manner controlled by him; and as to which I fully authorize and empower my Executors to retain and withhold the same.

" IN TRUST, to pay out or pay over or apply so much and such parts thereof as they may from time to time consider necessary, proper or expedient for the support and maintenance of the said Albert and his wife and children during his life; and on his death to pay over and distribute such part of his share as shall be then remaining in the hands of my Executors to his wife, Hattie K., and their children, or to such of them as shall be then living, in equal shares and proportions, share and share alike.

" Prior to the sale and disposition of my estate my Executors are authorized and empowered to lease or let the same, or any part

---

\* *Sic* in " case." Apparently should be " Edward B."— [REP.

thereof, for such terms as they shall see fit ; and upon making sales they are authorized and empowered to make, execute and deliver, with or without seal, proper deeds, conveyances, assignments and transfers thereof which shall be as effectual for every purpose as if made by me while living.

" If any of my heirs or any of the devisees or legatees herein named shall oppose the probate of this my Will, or contest the same in any manner, I revoke all provisions herein in favor of such opponent or contestant, and any share given him herein shall be divided into equal shares and belong to and be paid over to the children of my daughter Josephine, and the children of my son Albert equally, share and share alike.

" The share of neither of my children shall be affected or lessened by reason of any transfer of property, or loans or advances of money, or payments for or on account of either, which may have been or may be made by me. All such things I regard as absolute gifts, and intend and direct that they shall be so considered.

" Neither of the shares or legacies herein shall be entitled to any preference in payment.

" My Executors shall not be required to make or file any inventory of the furniture or contents of the various dwelling houses owned by me, or of the furniture or contents of my hotels, or of the machinery, &c., contained in the various mills and tenements owned by me; but, in lieu thereof, they shall make a verified statement of the various buildings, stating generally the contents of each, and the estimated value thereof.

" They may continue to keep open and operate my hotels and their appendages so long as they may consider it to be expedient; and a quarter-yearly statement of the result of such operating, signed by them, shall be the only voucher required of them in respect thereto. All such furniture, machinery and goods and chattels may be sold and disposed of by my said Executors at such times and in such manner, and at such prices as they shall consider appropriate and proper.

" My Executors and Trustees are authorized to employ such assistants, clerks, agents, &c., in the care and management of my estate as they may consider necessary or proper, and the expense thereof, salaries, &c., shall be charged against my estate.

" Revoking and annulling all other Wills by me at any time here-tofore made, I do declare this instrument to be my last Will and Testament, and I do appoint as Executors and Trustees thereof my son-in-law, Horace Russell, of the City of New York, and my friend, Edward D. Harris, of Yonkers, N. Y.

" (The fees and commissions of said Harris shall not exceed in any one year Five thousand dollars.)

" *In witness whereof*, I, the said Henry Hilton, have hereunto set my hand and seal this thirteenth day of April in the year 1897.

" HENRY HILTON.   [L. S.]

 " Signed, sealed, published and declared by the Testator, Henry
  Hilton, in our presence to be his last Will and Testament;
  and we, in his presence and in the presence of each other,
  and at his request, have subscribed our names as witnesses
  to such execution.   On 5th page, the words ' to time '
  and on 6th page, the words ' or any part thereof,' inter-
  lined before execution.

" HENRY H. RICE,

" 54 West 37th St., N. Y. City.

" ROBERT G. SMYTH,

" Saratoga Springs, N. Y.

" HERBERT ANSTEY,

" 218 West 139th St., N. Y. City."

*Jabish Holmes, Jr.*, for the plaintiffs.

*Franklin Bartlett*, for the defendants Albert B. Hilton and Hattie K. Hilton.

*Welton C. Percy*, for the defendant Joseph F. Sanxay, adminis-trator, etc., of Agnes S. Hilton. ·

*James F. McNaboe*, for Nathaniel S. Smith, guardian ad litem of the defendants Helen Hilton and others.

*Arthur H. Van Brunt*, for E. Francis Hyde, guardian ad litem of the defendants Ellen D. Hilton and Edna F. Hilton.

*David McClure*, for the defendant Cornelia H. Hughes.

PATTERSON, J.:

The will now before us is inartificially drawn and in some of its provisions is obscure and vague, notwithstanding which we think that the testator's intention as to the disposition of his property may be fully ascertained and made effectual. The construction given by the learned justice at the Special Term to the various provisions which were drawn into controversy is, in the main and as to the more important subjects involved, in accordance with the views we entertain after a careful consideration of the arguments made at the bar by the several counsel who discussed the case before us. It will suffice for the proper decision of the appeals that we state separately, but briefly, the conclusions at which we have arrived concerning the subjects of disputed construction as they were presented to and passed upon by the court below.

*First.* It is quite clear that the will is to be regarded in its entirety as one of personal property. The testator expressly declared that all of his estate and property of every kind and description and wheresoever situate, was given to his executors in trust " to take the custody and possession thereof and sell and dispose of the same at such times and in such manner as they shall deem fit or proper, and convert the same into money and pay over and distribute the same as follows : " (then making specific disposition). It will be seen from the whole will that there is no gift of anything, except of the proceeds of sale of all the testator's real and personal property. It is the blended proceeds that are ultimately given by the testator, some parts absolutely and some in trust. There is no ambiguity in this provision of the will; the direction to sell is imperative. No discretion is left to the executors respecting a sale, except as to time. Here the intention was manifest that the money to be realized on a sale of the testator's real property, combined with that arising from the sale of his personal estate, should be distributed among the recipients of his bounty, and the evidence shows that the situation of his estate at the time of his death was such that the general scheme of the will and the necessary administration of the estate under that scheme required the construction given by the court below to the clause referred to. That clause does not confer an authority only, but as said before gives a positive direction, and the cases cited in the opinion of the

learned judge at Special Term abundantly sustain the conclusion at which he arrived on this feature of the case. ·

*Second.* The trust in the executors to sell and convert the real estate into money and pay over and distribute the proceeds is a valid express trust to sell land for the benefit of legatees under subdivision 2 of section 55 of the Statute of Uses and Trusts, now section 76 of the Real Property Law (Laws of 1896, chap. 547.) The executors are not clothed with a mere power in trust, the land itself passing to the heirs; they are expressly authorized until a sale is made " to lease or let the same or any part thereof for such terms as they shall see fit." Thus they are empowered by implication to take the rents and profits until a sale is made. As is said in *Morse* v. *Morse* (85 N. Y. 58, 59), " a trust to sell, mortgage or lease lands for the benefit of legatees or to receive the rents and profits of lands and apply them to the use of any person during the life of such person or for any shorter period, are among the express trusts authorized by the statute. (1 R. S. 728, § 55.) It is clear that the power of sale in the will in question was conferred for the purpose of conversion and with a view to the distribution of the proceeds of the sale of the land among the testator's children. This is not expressly declared, but the prior gift of the whole residuary estate to them, followed by the power of sale to the executors, permits of no other inference. (*Fisher* v. *Banta*, 66 N. Y. 468; *Marsh* v. *Wheeler*, 2 Edw. Ch. 156; *Kinnier* v. *Rogers*, 42 N. Y. 531.) The direction to sell was imperative and operated in equity as a conversion of the land into money. It was the intention of the testator that the beneficiaries should receive their respective interests in money and not in land." We concur with the court below that " since the will worked an immediate equitable conversion of all the testator's real estate into personalty, the trusts set up by the will are to be considered as trusts of personal property, which are not fettered by the limitations prescribed for trusts of real estate, but may be created for any purpose not unlawful, subject only to the law against perpetuities. (*Cochrane* v. *Schell*, 140 N. Y. 516, 534.) " There is no invalid suspension of the power of alienation of real estate or of the absolute ownership of personal property. Neither is suspended for more than two lives in being. All the specific legacies are payable to the legatees personally, except as otherwise

provided.    The testator's daughter Mrs. Russell is to receive all she gets absolutely.    Without referring now to the specific legacies of $50,000 to each of the testator's four children, the share of the testator's daughter Mrs. Hughes is declared to be incapable of being sold, assigned or transferred, but on her death, leaving her son, Henry Hilton Hughes, her surviving, her share and interest then remaining is to be paid over and delivered to such son, and if he shall not survive her, then on her death any part of her share then remaining is to be paid over to the children then living of his daughter Mrs. Russell and his son Albert in equal shares.    The share and interest of Edward B. Hilton (not now referring to the $50,000 specific legacy) is also declared to be incapable of being sold, assigned or transferred, but upon his death leaving his wife and children, or either of them, surviving, the part, then remaining unpaid of his share is to belong to and be paid over to his wife and children, or such of them as shall be living, in equal shares.    With reference to the share of his son Albert (irrespective of the $50,000 specific legacy), that share is also declared to be incapable of being sold, assigned or transferred, or in any manner controlled by him ; and the executors are authorized to retain and withhold the same and to keep it in trust and to apply so much and such parts thereof as may from time to time be considered necessary for the proper support and maintenance of Albert and his wife during his life, and on Albert's death to pay over and distribute such part of his share as shall be remaining in the hands of the executors to his wife and their children, or to such of them as shall be then living, in equal shares or proportions.    So that in these various provisions which dispose of all of the testator's residuary estate there is nothing which offends against the Statutes of Perpetuities.

*Third.* We agree with the conclusion of the court below that the specific legacies given in the 1st to the 9th clauses of the will, inclusive, drew interest only from one year after the grant of letters testamentary, but we do not concur in the conclusion reached that each of the specific sums of $50,000 mentioned in clauses 1, 3 and 4 of the will is to be deemed a part of the share and interest of the defendants Cornelia H. Hughes, Edward B. Hilton and Albert B. Hilton respectively, and is "subject to the limitations placed upon each such share and interest."    On the contrary, we are of the

opinion that each of the specific legacies given by the testator in the clauses 1st to 9th, inclusive, are absolute gifts of money payable directly to the persons named and are to be entirely separated from the gifts of the residuary estate mentioned in the subsequent part of the will. The gifts to the testator's children of the specific sums of $50,000 associated with other gifts of money to the testator's grandchildren, brother and sisters, are to be taken out of his general estate. The scheme of the will was evidently to divide the estate into two portions; the one to be kept separate from the other and the amount of the second portion of the estate not to be ascertained or determined until after the first portion had been deducted. The testator gave the specific legacies mentioned and then, having excluded the amounts of those legacies, he directed that all the rest, residue and remainder of his property be divided into twelve equal parts, which should be paid over and distributed to his children, as follows: To Mrs. Hughes, two equal parts; to his son Edward, two equal parts; to his daughter Mrs. Russell, four equal parts; to his son Albert, four equal parts, under certain provisions respecting the share of each (excepting Mrs. Russell) which will presently be considered. It is argued that the specific legacies thus carefully excluded by the testator from the residuary estate are to follow the disposition made of the shares of the residuary estate, because the testator provides in connection with such disposition that " all the shares, legacies and bequests shall be paid personally to the party entitled thereto, except as herein otherwise provided." He then proceeds to direct that the legacies to the grandchildren shall be paid " personally and jointly with the mother, where the child is over sixteen and under twenty-one years of age;" " to those under sixteen, to the general guardian," and to " those over twenty-one, personally." These legacies to the grandchildren are the only ones that are limited as to payment, as legacies. Every other " legacy and bequest" is to be paid over personally to the legatee, except " as herein otherwise provided," and in the other provisions, with respect to the disposition of the shares of his children, the word " legacy" is not used. Every other reference in this part of the will placing restraint upon what is given refers to the " share and interest" of the daughter or of the son, the use of whose share is restricted. Concerning the interest of Cornelia H. Hughes, it is not the *legacy*

or *bequest* that is tied up, but the "share and interest," and so with what is given under this residuary clause to the testator's two sons. Payment of that which he has given as *specific legacies* to his grandchildren by the 5th clause is regulated, but there is nothing to indicate that after taking specific legacies out of his whole estate and making separate disposition of them, the testator intended to bring three of them immediately back into his residuary estate, and constitute them again part of that property from which he had expressly excluded them before. In the gifts under the second branch or department of the will, the word "share" and the word "interest" are used as synonyms and relate only to the share of the residuary estate. That the testator so meant, seems to be apparent from other language used in connection with these residuary gifts. Speaking of the gift to his daughter Mrs. Hughes, the testator says that if her son shall survive her, then on her death any part of her "*share*" then remaining shall be paid over, etc. And so concerning the respective *shares* given to his two sons. That he meant to have a distinction made between what passed as the residuary estate, and what passed by way of specific legacies is further emphasized by the fact that the testator declared that "neither of the shares or legacies herein shall be entitled to any preference in payment." It seems to us that the general scheme of the testator was that each of his children should receive a legacy of $50,000 in the same way as other legatees were to receive legacies of fixed amounts, and that those legacies being provided for, that which remained was to constitute the residuary estate which was to go in shares to his children; some of them being guarded by provisions which he deemed for the best interest of the recipients thereof.

*Fourth.* We adopt the construction given by the justice at Special Term to the provision of the will of the testator relating to the share in his estate intended for the benefit of his daughter Mrs. Hughes. That share was not given in trust. No trustee was appointed, and it seems quite plain that it was the intention of the testator that his daughter should not only have the use of the product or income of the two equal twelfth parts of the residuary estate, but that she might draw upon the capital of these shares. There is nothing in the provision under consideration suggesting that any one should hold them in trust or receive or pay over the

product of them.   Provision is expressly made that upon the death of Mrs. Hughes, *the then remaining part* of such two-twelfths shall be paid over to her son, or if he dies before his mother, *what remains* shall then be paid over to and belong to the children of Mrs. Russell and the testator's son Albert in equal shares or proportions. Here the testator contemplated that his daughter might draw upon the capital of her share, and that being the case, he intended to give his daughter " something more than a mere life estate."   The remainder interests in Mrs. Hughes' share are of what is left of that share at her death, and concerning it there is no restriction created by the testator in that clause of the will which directs that all the shares and interests shall be paid over to the persons for whom they are intended, except as otherwise provided in the instrument.   She is prevented only from selling or transferring the whole share.   She is not debarred from controlling it, as her brother Albert is of his share.   At the utmost, it can only be said that Mrs. Hughes would become a trustee for the remaindermen of such part of the shares as was not used by her, as in the case of *Smith* v. *Van Ostrand* (64 N. Y. 278), where provision was made for the wife of the testator, who did not intend to make an absolute gift of a sum of money to her, but she was empowered to use it for her support.   The court there held that the will must be read as if it had said that on the expiration of the life of the testator's wife or her widowhood, the sum of money should be transferred to his three children ; and it was further held that the widow had the use of the money during her life or widowhood, " with power to apply so much of the principal as might be necessary to her support, but that no other power of disposition, testamentary or otherwise, was given to her, and that, subject to the exercise of the power given, a remainder in the principal was bequeathed to the children.   This disposition, if valid, would entitle the plaintiffs to so much of the fund as on her death remained unexpended for her support, and this portion of the fund she held in trust for them."   Here we think the same relation exists as in the case cited.   The court at Special Term did not hold that Mrs. Hughes was a trustee for herself, but only of the unexpended portion of her share for the remaindermen.   The question of her being her own trustee is not involved here, for no trust was created as to her.   *Smith* v. *Van Ostrand (supra)* has been distinguished in sub-

sequent cases, principally on the point of security being required upon a payment over of a fund to a legatee for life (*Bliven* v. *Seymour*, 88 N. Y. 469 ; *Matter of McDougall*, 141 id. 27), but it has not been overruled.

*Fifth.* It is unnecessary to consider the provision of the will respecting the share in the residuary estate given to the testator's son Edward, as such son does not appeal from the judgment. Concerning the share given to the testator's son Albert, a trust is specifically created in that share, and the executors are the trustees of it. They are authorized and empowered by the testator to retain and withhold the same in trust, to pay out or pay over or apply so much and such parts thereof as they may from time to time consider necessary, proper or expedient for the support and maintenance of the said Albert and his children during his lifetime, and on his death to pay over and distribute such part of his share as shall be then remaining in the hands of the executors to his wife and their children or to such of them as shall be then living, in equal shares and proportions, share and share alike. This is to be treated as a trust of personal property. As said by the court below, it is true that the will does not mention the income derived from this share, but the right of the executors or trustees to receive that income inheres in their ownership of the shares in trust and arises by necessary implication, and further " they are not confined to paying over either principal or income to Albert or his family, but may pay it out or apply it not only for his support and maintenance, but for that of his wife and children, and these applications of the share are to be made as to the executors should seem necessary, proper and expedient. If for any reason the executors should not deem it necessary, proper or expedient to pay over or apply the whole income of the estate for the support and maintenance of Albert himself, there would be no unlawful accumulation of income, for his wife and children would undoubtedly be entitled to the unapplied balance." If the rents and profits are not disposed of, they go to the wife and children of Albert as the persons presumptively entitled to the next eventual estate.

*Sixth.* The question arising under the 9th clause of the will of the testator, relating to the fund of $25,000, appointed by the executors for the benefit of Agnes S. Hilton, was properly disposed

of by the court below. According to the provisions of the 9th clause, the executors were authorized in their discretion to set apart out of the testator's estate the sum of $25,000, and from that fund they were authorized from time to time as they saw fit to pay to or for the use of the testator's son Henry G. Hilton, and of his son's wife, Agnes S. Hilton, or to or for the use of either of them, such sums or amounts as the executors should see fit, or as they should consider proper or expedient. The executors notified Agnes S. Hilton that they had elected to appoint her the sole beneficiary of this fund. Agnes S. Hilton died in March, 1900. During her life there had been paid to her a certain portion of that sum, and there remains a balance of $20,329, which her administrator claims as being part of her personal estate. We agree with the court below that Mrs. Agnes S. Hilton did not by the exercise of the power of appointment become vested with an interest in the whole fund, and that upon her death the balance of that fund became part of the residuary estate of Henry Hilton. It was a fund held by the executors as trustees, and Mrs. Hilton was entitled only to such portions thereof as the executors in their discretion set aside or allotted for her personal benefit. There was no gift of the fund either to Henry G. Hilton or to his wife. We also agree with the court below that the case is to be distinguished from those in which there has been a clear gift of the legacy, with the time of payment alone postponed or left discretionary. We think it was the intention of the testator that the fund should not vest in Mrs. Hilton, and that there was no gift to her, and that while the whole fund might have been exhausted by payments made in the discretion of the executors during the lifetime of Mrs. Hilton, there is nothing in the terms of the will by which the power is given that can be construed into an absolute gift of the whole fund to her, so that she could dispose of the whole of it in her lifetime, or of any part of it by last will and testament. We think the contention of her administrator with the will annexed cannot be upheld.

*Seventh.* The court below was not authorized in this action to hold that the executors were empowered to employ and pay one of themselves as an agent of the estate. That subject does not arise in an action for the construction of the will, because it relates simply to the propriety of the employment of a particular person, and not

legitimately upon a construction of the will. It does not present the subject of the power of the executors to employ assistants or agents. That power is expressly conferred by the will, but the approval of the court has been given, in an action for construction, to the employment _of a particular person_, and the payment to him of a salary out of the income of the estate. If the question arose simply as to the right of the executors to employ one of their number as an agent of the estate, the answer would be unhesitatingly in the negative. That there may be circumstances under which it would be wise and prudent for executors to employ one of their number to perform _non-executorial_ duties to the estate is well established (_Lent_ v. _Howard_, 89 N. Y. 169); but the question of the advisability and necessity of such employment is one which arises upon an accounting of the executors. Such an inquiry is inappropriate in an action such as the present.

On a careful consideration of the whole will and of the findings of the court below, and of the provisions of the judgment, we find nothing further requiring comment, and our conclusion is that the judgment appealed from should be modified to conform to the views hereinabove expressed, and as modified it should be affirmed. Inasmuch as all the questions that have been raised and discussed have fairly arisen and required judicial settlement, the costs of all parties should be borne by the estate.

O'BRIEN, McLAUGHLIN and LAUGHLIN, JJ., concurred.

Judgment modified as directed in opinion, and as modified affirmed, with costs to all parties payable out of the estate.