In the Matter of the Estate of JOSEPH J. NIMPHIUS, Deceased.

Surrogate's Court, Bronx County, January 30, 1931.

*Goldwater & Flynn* [*Monroe Goldwater* and *Sol Boneparth* of counsel], for the executors.

*Edward E. Bianco*, special guardian.

HENDERSON, S. In this accounting proceeding application is made for the construction of the decedent's will. The question is whether paragraph "third" of the will created a trust or gave to the legatees vested interests subject to the exercise of a power in trust. After the usual direction to pay funeral expenses and just debts, the will, in so far as is now material, continues as follows:

"*Second.* I direct my executors hereinafter named to divide my personal property of every kind and nature, into eight equal parts or shares and I give and bequeath one of said shares unto each of my children now living and one share unto my grand-children Josephine and Bertram share and share alike, for their own sole and separate use, absolutely and forever.

"*Third.* All of my real property I give and devise unto my trustees hereinafter named for the following uses and purposes: To rent and manage the same and to keep the same rented and to pay all taxes and other legal charges and expenses of maintenance including the cost of proper and necessary repairs to the same and to divide the accumulation of net rents and income therefrom, from time to time, share and share alike among my living children and the children of any deceased child of mine, *per stirpes* and not *per capita*, until all of my said real estate and property shall have been sold by them, as hereinafter provided.

"And I hereby authorize and empower my trustees hereinafter named to sell any and all of my said real estate, at such times and upon such terms and conditions and in such manner as they or a majority of them shall determine to be for the best interests of my estate, provided however that my said trustees shall not be required or compelled to sell my said real property or any part thereof for a period of five years from the date of my death.

"Upon the sale of any one or more parts or parcels of said real property, I direct my trustees to divide the net proceeds thereof, after retaining however, any reasonable and proper sum or sums for carrying charges for any then remaining real estate and for expenses of administration and accounting, into eight equal shares or parts, and I give and bequeath and direct my trustees to pay over one of such shares or parts to each of my children and one unto the children of my deceased son John, share and share alike, the children of any child of mine now living but who may hereafter die before such sale and distribution to take the share its or their parent would have taken if living, share and share alike.

"Until the sale of each parcel and all of my said real property, I authorize and empower my trustees hereinafter named, to lease and rent the same in such manner and upon such terms and conditions as they or a majority of them, in their sole judgment and discretion may deem for the best interests of my estate."

The testator directed that his real property be sold after his death and the proceeds divided into eight equal parts and divided among certain beneficiaries. To carry out this testamentary plan he left the real property to trustees with a mandatory direction to convert the real property into money for the purpose of such division. He provided that the trustees could not be required to sell for a period of five years, but there is no limitation as to the time when they may sell. In suspending the right of the beneficiaries to enforce the trust during that time, it is evident that he desired his trustees to convert the real estate at the time which, in their opinion, would be the most beneficial to the estate. In the meantime they are directed to collect the rent and manage the property in the interests of the legatees, among whom the trustees are to divide the net rents. If title vests in these beneficiaries, any one of them might demand a partition of the property. It is evident that the decedent was desirous of avoiding such a forced sale. Subdivision 2 of section 96 of the Real Property Law permits the creation of a trust for the benefit of legatees. There is no unlawful suspension of the power of alienation for title vests in the trustees who at all times are empowered to sell the real property. The fact that a sale of the property may not be compelled for a period of five years is immaterial. It is sufficient that it may be sold at any time in the absolute discretion of the trustees. (*Robert* v. *Corning*, 89 N. Y. 225, 236; *Chanler* v. *New York Elevated R. R. Co.*, 34 App. Div. 305, 307; *Matter of Varet*, 181 id. 446, 450; affd., 224 N. Y. 573.)

The contention that the trust is not limited upon the lives of beneficiaries has no bearing on the question. Such provision is found in subdivision 3 of section 96 of the Real Property Law. Subdivisions 2 and 3 are distinct and separate provisions. They do not complement each other and are not to be read together. This will creates an equitable conversion of the real property into personalty as of the time of the testator's death. The legatees' interests are in money, not land, and these legacies vested in the respective legatees upon the decedent's death. Upon this vested interest there is a limitation over to the issue of the respective legatees in the event that they shall die before distribution. I hold that the trust is valid and that the beneficiaries take no legal estate or interest in the realty, title to which is vested in the trustees. (*Hubbard* v. *Housley*, 43 App. Div. 129; affd., 160 N. Y. 688; *Morse* v. *Morse*, 85 id. 53; *Russell* v. *Hilton*, 80 App. Div. 178, 187; affd., 175 N. Y. 525.) The second question submitted has been withdrawn because of a change in the status of the estate.

Settle decision and decree accordingly.