In the Matter of the Estate of THOMAS CALLISTER, Deceased.

Surrogate's Court, Queens County, June 25, 1935.

*Weller, Rogers & Bergen,* for the executors.

*Raymond O'Brien,* committee for Estelle M. Callister, an incompetent.

*Reiss & Reiss,* for the contestant, Margrethe Callister.

*Walter J. Sharkey,* special guardian of Estelle M. Callister, an incompetent.

HETHERINGTON, S. The decedent died on March 28, 1914, leaving a last will and testament which was admitted to probate on April 1, 1914. Letters testamentary were issued on the same day to his executors, William L. Callister and John T. Callister. On September 17, 1934, they filed their first account and a petition for its judicial settlement. Objections have been filed thereto by the special guardian for Estelle M. Callister, incompetent, and the executrix of Herbert J. Callister. A request for the construction of the fifth and sixth paragraphs of the will is included in the objections.

The first paragraph provides for the payment of testator's debts and funeral expenses. The second and third paragraphs provide for legacies of $500 and $1,000, respectively. The fourth paragraph specifically devises two parcels of real estate to William L. and John T. Callister, two of testator's nephews. The fifth and sixth paragraphs, which the court is asked to construe, provide as follows:

" *Fifth.* All the rest, residue and remainder of my estate of every kind and nature, both real and personal, and wheresoever situated, I give, devise and bequeath to my nephews and nieces the children of my brother William Callister, to wit: William L. Callister, John T. Callister, Jennie Flockhart, Estelle Callister and Herbert J. Callister, and also to Thomas B. Callister, son of my deceased brother, John Callister, the same to be divided among the said six persons equally, share and share alike. If any of the foregoing persons should die leaving issue, the share of the one so dying shall go to his or her children.

" If any of the foregoing named persons should die without issue, then his or her share shall become part of the residuary estate, and be divided among the survivors, share and share alike.

" *Sixth.* I hereby authorize and empower my executors hereinafter named, or the survivor of them to sell and dispose of any and all real estate of which I may die seized, either at public or private sale, as they see fit, and upon such terms and conditions as they shall deem advisable, and until said real estate shall be sold or my estate duly settled according to law, I hereby authorize and empower them to collect and receive therefrom, all the rents, issues and profits thereof, and after paying out the charges properly applicable

thereto, to dispose of the residue in accordance with the provisions heretofore made in this my Last Will and Testament."

Testator left a substantial estate, consisting of realty appraised in the transfer tax proceeding at $117,095.42 and personalty of the value of $126,467.63. The realty consisted of eighteen parcels, two of which were specifically devised as aforestated. The estate accounted for amounts to $706,071.77, of which amount real estate sold brought $461,962.11. Rents collected total $49,659.67. Disbursements in connection with the realty, consisting of taxes, assessments, mortgage interest and payments thereon, repairs and insurance, amount to $152,903.53. Several parcels of realty remain unsold. Throughout the twenty-year period the executors have exercised exclusive management and dominion over the realty. Decedent's debts and pecuniary legacies have been paid and satisfied. The question to be determined and briefly stated is whether testator's nephews took upon his death a present legal estate in his realty as tenants in common, subject to a bare power of sale vested in the executors, or whether the title to the realty vested in the latter.

I think that the testator intended to and did create a valid express trust and that the title to the realty vested in the executors. Section 96 of the Real Property Law provides as follows: " An express trust may be created for one or more of the following purposes:

" 1.  *  *  *.

" 2. To sell, mortgage or lease real property for the benefit of annuitants or other legatees, or for the purpose of satisfying any charge thereon." Section 97 of the Real Property Law provides as follows: " A devise of real property to an executor or other trustee, for the purpose of sale or mortgage, where the trustee is not also empowered to receive the rents and profits, shall not vest any estate in him; but the trust shall be valid as a power, and the real property shall descend to the heirs, or pass to the devisees of the testator, subject to the execution of the power."

In the sixth paragraph, after conferring power to sell, testator expressly provided: " and until said real estate shall be sold or my estate duly settled according to law, I hereby authorize and empower them to collect and receive therefrom, all the rents, issues and profits thereof, and after paying out the charges properly applicable thereto, to dispose of the residue in accordance with the provisions heretofore made in this my last Will and Testament." Here there is not only an express direction to receive the rents but also a disposition of them among the beneficiaries of his residuary estate. The language employed by the testator is stronger than

that found in *Morse* v. *Morse* (85 N. Y. 54), where the will provided with respect to the residuary estate and power of sale as follows: " I will and bequeath unto William P. Morse, Eliza Morse, Lucy Morse, Stephen Morse, Jr. and Charles D. Morse, five-sixths of all the residue and remainder of my estate, both real and personal, of every name and nature, to be equally divided between them. \* \* \* I will, authorize and empower my executor hereinafter named, to sell and convey by deed, any and all my real estate, at such time and in such manner as he shall think it proper for the interest of my estate, and to rent and lease the same until thus sold." In considering whether the language quoted created an express trust, ANDREWS, J. (at p. 59) says: " There is no express direction in the will as to the disposition to be made by the executor of the rents received. But the reasonable inference and implication is that they are to go to the persons beneficially interested. (*Moncrief* v. *Ross*, 50 N. Y. 431.) Nor does the will expressly authorize the executor to receive the rents and profits of the land until sale. But the power to rent and lease the land carries with it and includes the power to receive the rents accruing from its execution." Here the executors are authorized to receive and dispose of the rents. It seems clear that the will created a valid trust and for the purposes enumerated in subdivision 2 of section 96 of the Real Property Law. (*Tobias* v. *Ketchum*, 32 N. Y. 319; *Robert* v. *Corning*, 89 id. 225, 236; *Hubbard* v. *Housley*, 43 App. Div. 129; affd., 160 N. Y. 688; *Russell* v. *Hilton*, 80 App. Div. 178; affd., 175 N. Y. 525; *O'Hara* v. *Tewes*, 234 App. Div. 293; *Matter of Narwood*, 141 Misc. 199.) It is equally clear that the power of sale was conferred for the purpose of conversion, and with a view to the distribution of the proceeds of sale of the realty among the testator's nephews and nieces. Testator's realty holdings were extensive and it is reasonable to infer that in conferring the power of sale he wished to avoid the delay and expense which would be involved in a partition action. His intention was to provide an expeditious and inexpensive method of disposing of his property. It is not reasonable to assume that he intended or thought it possible to physically divide sixteen parcels equally among six persons. The only way the testamentary scheme can be carried out is by a sale of the property. His intention was not to give them the land but the proceeds thereof. It is my view that the direction to sell was imperative, and operated in equity as a conversion of the realty into personalty. (*Morse* v. *Morse*, *supra; Russell* v. *Hilton*, *supra; Matter of Arns*, 144 Misc. 584; *Matter of Taft*, Id. 896.) Proceed accordingly.