J. WYMAN JONES, Appellant, *v.* GEORGE L. KENT, Administrator, etc., Impleaded, etc., Respondent.

Plaintiff sold to R., defendant's intestate, certain stock for a sum paid down, "and one-half of whatever price the same should be sold for, when sold, over and above that sum." In an action to establish and enforce an alleged trust in said stock in the hands of defendants, *held*, that the agreement imported an obligation to sell, the performance of which plaintiff could enforce; that until there was a possibility of a sale of the stock for a price above the sum paid, the sale was optional with R., as plaintiff could have no interest therein; that conceding R. alone could determine at what time after that event happened he should sell, and that the inability of plaintiff to interfere continued during the life of R., upon his death, plaintiff could compel a sale; and, after a deduction of the sum paid, a payment to him of one-half of the residue.

But, *held*, that plaintiff was not entitled to an account of dividends, or other income received by defendant from or on account of the stock.

By consent of plaintiff a portion of the stock was exchanged for bonds, R. paying a sum of money to effect the exchange. *Held*, that the bonds stood in place of the stock transferred for it, and the sum paid upon the exchange, in addition to the sum paid upon the purchase, should be retained by defendant from the avails of the stock and bonds when sold.

(Argued March 11, 1880; decided April 6, 1880.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, affirming a judgment in

favor of defendant, entered upon a decision of the court on trial at Special Term. (Reported below, 13 J. & S., 66.)

This action was brought to have it adjudged that certain stock and bonds, which came into the hands of defendant Kent as administrator of the estate of E. Rockwell, deceased, with the interest and dividends received thereon were held by said defendant in trust; to compel a sale of said stock and bonds, and for an accounting, etc.

The facts appear sufficiently in the opinion.

*Dwight Jones* and *William Stanley*, for appellant. A sale was clearly within the contemplation of the parties, and being contemplated the law implies a promise to perform. (*Booth* v. *Cleveland Mill Co.*, 74 N. Y., 21; *Lorillard* v. *Silver*, 3 Transcripts of Appeals, 143, 145; *Wight* v. *Wood*, 57 Barb., 471.) Plaintiff cannot, therefore, be deprived of the benefits to be derived from such a sale. (*Moore* v. *Executors of Moore*, Coxe [N. J.], 363.) Whether or not a sale of the stock has taken place, plaintiff has a definite trust interest in it. (*Ripley* v. *Larmouth*, 56 Barb., 21; *Foote* v. *Foote*, 58 id., 258; *Foote* v. *Bryant*, 47 N. Y., 547; Willard's Eq., 603; Perry on Trusts, § 125–168; Lewin on Trusts, 115, 157; *Currie* v. *White*, 45 N. Y., 822.) The sole fact that Rockwell is not living, is sufficient reason for plaintiffs being allowed to close out his interest. (Willard's Eq. [Potter's ed.], 612.) A court of equity may decree a sale of trust property at any time. (Perry on Trusts, 396; *Wight* v. *Wood*, 57 Barb., 471, 475; Parsons on Contracts, vol. 2, p. 535; *Wiswall* v. *McGowan*, 2 Barb., 270; *Farmers' Loan and Trust Co.* v. *Hunt*, 16 id., 514; *White* v. *Talmadge*, 35 N. Y., 223; *Howe* v. *Woodruff*, 21 Wend., 640.) The condition precedent, if such existed, has been waived. (Benjamin on Sales, 452, 453; *Wight* v. *Wood*, 57 Barb., 471; *Moore* v. *Executors of Moore*, Coxe [N. J.], 363.) A condition precedent depending for its performance on the party who sets up non-performance, is no defense. (Benjamin on Sales [2d ed.], 453.)

*George S. Hamlin*, for respondents. The written contract neither expresses nor implies a trust, nor does it impose an obligation to sell the stock. (*Lorillard* v. *Silver*, 36 N. Y., 589; *Wemple* v. *Stewart*, 22 Barb., 154, 160; *Moffat* v. *Laurie*, 15 Com. Bench Rep., 582, 593.) The contract clearly discloses an absolute sale. (*Lent* v. *Hodgman*, 15 Barb., 274.) The only right acquired by the plaintiff under the contract was a right to share in the proceeds of the stock over $3,000, contingent upon a sale for more than that sum. Such a sale was a condition precedent to any right or interest on the part of the plaintiff. (*Lorillard* v. *Silver*, 36 N. Y., 578; *Wright, Assignee*, v. *Wood*, 57 Barb., 471, 474; *Childs* v. *Smith*, 46 N. Y., 34; *Moffat* v. *Laurie*, 15 Com. Bench Rep., 582.) Even if a trust could be established, it would not avail the plaintiff. (3 Transcripts of Appeals, 145, 147.)

DANFORTH, J. Two instruments similar in form lie at the bottom of this controversy. They are in these words :

"Received of J. W. Jones by agreement, one thousand shares of St. Joe Lead Stock for which I have paid him $3,000. The understanding is that I am to give said Jones one-half of whatever price the same is sold for, when sold over and above that sum.

"Dated NEW YORK, *June* 19, 1866.

"E. ROCKWELL.".

This is one ; the other is dated June 29. The plaintiff claims that they express or imply a trust. The defendant denies this, and by his answer alleges that they were executed in pursuance of a contract by which the plaintiff "sold to said E. Rockwell, two thousand shares of stock for the price mentioned in said receipts, to wit : For each one thousand shares respectively, the sum of $3,000, and one-half of whatever price the same should be sold for, when sold over and above that sum," and the finding of the trial court sustained this view of defendant. There is evidence upon which the finding may stand and the only substantial

question upon this appeal is whether the plaintiff is entitled to have a sale of the stock made by the defendant. The answer must be found in the written agreements interpreted in the light of the cardinal rule that a writing contains all that may fairly be implied from it. (*Potter* v. *The Ontario and Livingston Mutual Ins. Co.*, 5 Hill, 147; *Booth et al.* v. *C. R. Mill*, 74 N. Y., 15.) And thus read, I think it imports an obligation to sell, the performance of which the plaintiff may enforce. The first clause recites two facts, both past transactions: 1st. That Rockwell has received of Jones 1,000 shares of stock; and 2nd. That Rockwell has paid him therefor $3,000. That something more was intended than a simple statement or declaration, and that the transaction which preceded and led to it, included more elements than a delivery and receipt of stock and payment therefor is evident from the words "by agreement," meaning through or in consequence of an agreement. The stock or money then was not the only consideration upon which the parties acted; there was in addition an agreement, moving the one party to pay the money, and the other to deliver the stock. If, however, there was nothing more, it would appear that the agreement embraced just that transaction and the paper would stand as the record of its fulfillment. But in the second clause we find what the agreement really was. The words are those of Rockwell, an express agreement on his part, he having signed the paper, and an implied agreement on Jones' part, from his acceptance of the money and the written instrument. It thus expresses the mind of the parties: "The understanding" (that is the agreement) "is that I am to give said Jones one-half of whatever price the same is sold for, when sold over and above that sum." Now here we have a promise not voluntary as of something thrown in, but forming part of the consideration on which Jones delivered or parted with the stock. It was an inducement to the trade, as much so as the promise to pay, or the payment of the $3,000. A further promise to pay Jones the one-half of whatever price the stock is sold for over and above $3,000. So much is

plain enough and this construction accords with the argument of the learned counsel for the respondent, as stated upon his printed points. He says: "It acknowledges the receipt of the stock and then states the price paid and to be paid for it." There is then no intention of a gift, but the expression of a promise upon good consideration. The time of performance is stated. It is "when" or at the time that the stock is sold. It does not in words say that the stock shall be sold, but as Jones can have the price or consideration of his transfer from no other source, it seems manifest that both parties understand that the event should at some time happen. (*Telegraph, etc., Co.* v. *McLean*, 8 L. R. Chy. [App. Cases], 658; *McIntyre* v. *Belcher*, 14 C. B. Reports [N. S.], 654.) Thus only could the price be ascertained. One contingency was clearly in the minds of the parties, the possibility of a sale at a price above $3,000. Until that came to pass Jones could have no interest in a sale, and whether a sale should be made prior to that time was optional with Rockwell. It is urged by the respondent that it was also for Rockwell alone to determine at what time after that event happened, he should sell; that the exclusive right of property was in him, to be enjoyed according to his notions of his own interest or duty; that Jones trusted to his judgment and discretion, and so long as he might exercise it, could not interfere. It might be conceded that this inability on the part of Jones continued during the life of Rockwell, so that, if at any time, the stock went up Rockwell might think it would go higher and prefer to wait; that he might do so, and that Jones took this risk.

It is not necessary to determine the soundness of this contention, for Rockwell is now dead, and the property unsold and because it is no longer in his power to comply with the terms of his agreement and bring about the event, on the happening of which his promise was to be performed, is the plaintiff to lose the consideration for which he bargained, or the fruition of it be postponed until the representatives of Rockwell may in the course of administration deem it proper,

or find it necessary to make a sale ? or, that not occurring until the heirs or distributees of Rockwell's estate find it for their interest or pleasure to dispose of the stock and so fix a price ? This would be unreasonable and might render it impossible for the plaintiff to avail himself of the advantage for which he contracted.

The cases cited by the respondent are not in conflict with this conclusion. *Lorillard* v. *Silver* (36 N. Y., 579), turned upon the question whether the defendant was bound to accept an offer for the property there involved ; it was held he was not, and the ground upon which our judgment in the present case rests would lead to the same conclusion had the plaintiff come into court relying on a similar fact. In *Wemple* v. *Stewart* (22 Barb., 154), and *Moffatt* v. *Laurie* (15 Com. Bench, 583), it was clearly optional with the party sought to be charged to have the event happen or not on which the liability depended ; therefore it might never happen. In the case before us, the undertaking in effect is that it shall happen. So far as the plaintiff seeks to recover, or have an account of dividends or other income received by the defendant, from or on account of the stock, he must fail. The contract does not cover them. It appears however that by the plaintiff's consent, a certain quantity of the stock was exchanged for bonds of the same company, Rockwell paying therefor $600 of his own money. This money, in addition to the $6,000, should be restored to him from the avails of the stock and bonds when sold, and the bonds stand in place of the stock for which they were received.

The judgment of General and Special Terms should be reversed, and a new trial ordered, costs to abide the event.

All concur, except CHURCH, Ch. J., not voting.

Judgment reversed.