By the Court.—Sedgwick, Ch. J.
The counsel in the argument of the appeal have not raised any question of practice or of form, and have in effect, made the matter to be decided, the same as if on a trial it appeared that the only arrangement between the parties was such as would be proven by the existence of the facts alleged by the defence in the answer to have existed.
Attention is to be given first to ascertaining what were the relations of the parties formed by ,the correspondence between them.
The letter of plaintiff began, “ We propose to furnish,” etc. The answer of defendants was, “We beg to accept your offer,” etc. As the latter was a reference to the former, and as if it referred to something other than the former, there would be no aggregatio mentium, it must be taken that what was termed by defendants, “ your offer ” meant “ your proposal.” The proposal was accepted. This means no more than, that the proposal was assented to. As a proposal is necessarily unilateral, merely accepting it implies no engagement on the side of the party to whom it is addressed beyond this, that *551 the party addressed, implies that he agrees to be bound by the terms of what is proposed. If there is. not to be found in those terms a binding engagement, the party accepting is not bound.
In Justice v. Lang, 42 N. Y. 493, it was held that a verbal promise to buy was sufficient consideration to support a written contract to sell. In the same case on a later appeal, 52 N. Y. 323, it was held that under the circumstances of that case, whether such prondse was made was a question for the jury. It was held that the testimony of the plaintiff that he “ accepted the contract ” would not necessarily show that he had made the verbal promise. Such testimony was equivocal. “In one sense he accepted it when he put the paper in his pocket and carried it away, and in another sense he may have accepted it as a voluntary promise or proposal to sell and deliver the arms, leaving it optional with him to accept or refuse them, and in still another sense by consenting to its terms and agreeing to' abide by and perform it as the vendee named in it.” In the case cited the memorandum signed by the defendant was, “We agree to deliver,” etc.
In the present case, the sense in which the acceptance was made, is determined by the fact that it was only a proposal that was accepted.
In Butler v. Thomson, 92 U. S. 402, the memorandum was signed by a broker common to both parties. The form was “ Sold for A. B. to C. D.” certain goods, etc. The court held that this was a contract of the defendants to buy, because there could be no sale without a buying and therefore the word “sold” comprised the buying. This reasoning would not be applied to a proposal because that could occur without a purchase or a promise to purchase.
In Pordage v. Cole, 1 Saund. 319, the head note is, “If it be agreed between A. & B. that B. shall pay A. a sum of money for his lands, etc., these words amount to *552 a covenant by A. to convey the land; for agreed is the word of both.”
What then were the terms proposed ? The plaintiff was to “ furnish ” three steamers with coal for the year 1888. The subject matter of the proposal, on a view favorable to the plaintiff, was the supply of coal to the steamers for their successive voyages. It was not the obligation of the plaintiff that the coal should be u furnished ” in one mass for the whole year. It could not have been meant that it was a privilege of plaintiff to deliver the whole on the 1st of January or the 31st of December. The intention at least was that there should be successive deliveries from time to time. As' the plaintiff would not know the several amounts, or the times when coal would be needed, it was to be implied thaf the obligation was to furnish coal when notified by the defendants, when and in what quantities coal was needed or to be delivered. This notification was, therefore, a condition of the creation of plaintiff’s duty to furnish the coal. No such notification was given., Therefore there was no obligation on the part of plaintiff to furnish coal and no consideration to defendants for any supposed promise on their part to “ receive” the coal unless it may be that there was an implied promise by defendants to notify plaintiff. There was no such express promise.
Undoubtedly, if notification was given, the defendants would be liable for the amount specified in the notice at the price named in the terms of the proposal. L’Amoreux v. Gould, 7 N. Y. 349 ; Thayer v. Burchard, 99 Mass. 508 : Great N. R’way Co. v. Witham, 9 L. R. C. P. 507.
I do not think there is any implied promise by defendants to give the notice in question. Thayer v. Burchard, supra; Bailey v. Austrian, 19 Minn. 535 ; Burton v. G. N. R. Co., 9 Exch. 507. The case is not different from that of a bare condition in a grant on which no action to perform the condition lies.
*553 In Booth v. Cleveland Rolling Mill Co., 74 N. Y. 15, the court did not hold, that the ground of the implied promise was any condition contained in the instrument, but that the clause is an agreement signed by defendants that the defendants “ are to proceed at once to make said rails,” etc., could not be interpreted as conditions “and evinced a promise to proceed at once,” etc.
In New England Iron Co. v. Gilbert El. R. R. Co., 91 N. Y. 153, the court did not hold that a statement of a - condition on which there was to be performance on plaintiff’s part implied a promise by defendant to give the notice, but said that it appeared from other covenants, that there was an intention manifested that the defendant should do certain things in which the plaintiff acquired by the contract an interest. Upon that the court did. not definitely hold that there was an implied• promise to do the things or give the notice. It said “ although the defendant does not in express terms undertake to do the act or give the notice which shall set the plaintiff in motion, a promise to do so or at least a promise that the plaintiff shall have the building of the railroad, if that enterprise is prosecuted by the defendant, is clearly to be implied from the covenants and stipulations which were inserted,” etc. From this it would seem, that the latter kind of promise was to be implied, there being some doubt as to the former kind of promise. That case as presented did not make it necessary to determine what would be the measure of damages in the case of a promise not to give work to another, unaccompanied with a valid promise to give it to the plaintiff.
In this case, there is only the condition and nothing else to show an implied promise. The only thing in which the plaintiff could have the interest pointed at in New England Iron Co. v. Gilbert El. R. R. Co., supra, was the payment of the purchase price, and this could not affect the nature of the obligation upon which that price was to be paid.
*554 In Quick v. Wheeler, 78 N. Y. 300, the agreement by defendant was to pay the plaintiff 4i cents per foot for from 6 to 15 thousand feet of timber of same kind, etc., and delivered at the place aforesaid during the winter, etc. The agreement was. signed by both parties. The court said “ There was no mutuality. There was not the consideration which mutual promises give a contract. The plaintiff did not bind himself to sell and deliver the tie timber. Hence this contract can be treated only as a written offer on the part of the defendant to take and pay for the timber upon the terms stated.”
In Jones v. Kent, 80 N. Y. 585, the obligation of the vendee to pay the consideration stipulated for by the vendor, was made the ground of the implied promise •that the court held was made by the vendee, it being the case of property delivered to vendee.
As notice or demand was not given or made, my opinion is that the plaintiff was not held to furnish any coal, and that defendants were not held to pay for any coal that had not in fact been demanded or received.
By the answer, it appeared that the defendants had sold the steamers and did not need any coal for them after June 25, 1888. In view of the conclusion, that the obligation of the defendants to pay depended upon whether they had given a notice or made a request or demand, it is not necessary to examine the matter which would be only an examination of the reason why the defendants ceased to give orders.
The counsel, however, have given a part of their argument to this subject in a certain way.
One side took the position, that as the defendants needed no coal for the steamers after they were sold, they were absolved from the contract, or rather that the contract did not contemplate the furnishing any coal after that time. If this is correct it would be because the contemplation of the parties was, that such coal should be furnished as the defendants needed for *555 the steamers. The other side took the position that whether the defendants needed the coal for the steamers or not, they were bound to take as much as the plaintiff was bound to furnish, and that was as much as the steamers should be supplied with to enable them to make the regular trips of 1888.
The question is, again, what are the implications of the contract. Parsons says, vol. 2, (5th ed.) 515: “Thegeneral ground of a legal implication is, that the parties to the contract would have expressed that which the law implies, had they thought of it, or had they not supposed it was unnecessary to speak of it because the law provided for it.” In Russell v. Allerton, 108 N. Y. 288, in the contract to be construed, was a clause “ charterers to approve the ventilation.” It was necessary to determine whether they might make or not make an approval at their pleasure. The court held that they could not. It was said “ To give the words in question” that meaning “is to place the plaintiff in a matter purely of business, wholly at the mercy of others with whom they were contracting. Could the plaintiff have intended any such results or could the defendant have expected such action on the part of the plaintiff ? ” It was held that under the clause the charterers were hound to approve such devices as would secure ventilation to a reasonably sufficient extent, under the circumstances.
It seems that parties about to make an arrangement as to coaling vessels for a year, would not think that the owner would keep vessels for the sake of having them coaled, or that he would need coal after he had sold them. There would not be among business men the idea, that coal to be bought to he used by the buyer upon vessels would be needed or would be bought for vessels after they had been sold. I therefore think that by the language used, the parties to this arrangement did not mean that the plaintiff should “ furnish ” coal to the vessels after the defendants had sold them and needed no more coal for them. Of course a person can *556 buy more coal than he will need for any specified purpose, and a contract for that is valid. He is not held to the purchase until a construction of the contract shows that such was its meaning. The language of this contract is so undefined, so uncertain, that construction is called for, and that is, that the steamers were to be furnished so long as the steamers remained in the circumstances that existed at the time of the making of the arrangement. The important circumstance now referred to is, that the steamers were owned and managed by the defendants.
The case of Whelan v. Ansonia Clock Company, 97 N. Y. 295, follows the case of Niblo v. Binsse, 1 Keyes 476. Niblo’s assignor had contracted to put certain heating apparatus into a house. Before the work was done the house was burned. The plaintiff sued for the work already done. The defence was, that the contractor had failed to do all the work he contracted to do. This was held to be no defence because, as the court decided, the contractor’s failure was caused by a default of the defendant. “If one party agrees with another to do work upon his house, the law implies that the employer is to have the building in existence upon which the work contracted for may be done.” In the cited case there was no doubt as to the extent of work the contractor agreed to do. In the present case, it has-been said that the true interpretation of the contract did not call upon the plaintiff to deliver, or the defendants to buy coal for the ships wdien they ceased to be under the ownership or management of the defendants. In Tompkins v. Dudley, 25 N. Y. 272, it was held, that if by contract the completion of a house is a condition precedent of the payment of money as compensation, there is no obligation to pay the money unless the house be in fact completed. And though the house was burned, the condition was not performed.
In Booth v. Spuyten Duyvil Rolling Mill Co., 60 N. Y. 490, it was. held, that if a party unqualifiedly *557 contracts to deliver 400 tons of rails he must perform his contract or be liable for a non-performance, although his rolling mill, in which he would make the rails, be burned.
In Dexter v. Norton, 47 N. Y. 62, it was held, that when specific property is the subject of a contract of sale with future delivery, title not vesting in the vendee, and before the day of delivery it is burned without fault on the part of vendor, the latter is not bound to a delivery or liable in damages. The reason for this is, that the obligation to deliver is subject to an implied condition that the property sold remains in existence. There is no implied contract by the vendor that it shall exist.
I am of opinion, that the contracts of the parties did not imply that the coal to be “ furnished ” to the steamers, was such coal as would be needed for them, if they went into other hands than those of defendants.
The judgment below should be reversed "with costs to abide event, and that defendants should have judgment on the demurrer with costs.
Truax, and Dugro, JJ., concurred.