(152 App. Div. 399.)

### SIMON v. ETGEN et al.

(Supreme Court, Appellate Division, Second Department. September 10, 1912.)

1. CONTRACTS (§ 155*)—CONSTRUCTION AGAINST PARTY USING WORDS.
    Any ambiguity in the language of a contract is to be construed against the party using the words.
    [Ed. Note.—For other cases, see Contracts, Cent. Dig. § 736; Dec. Dig. § 155.*]

2. CONTRACTS (§ 154*)—CONSTRUCTION—EQUITABLE CONSTRUCTION.
    A contract should not be so construed as to allow one of the parties to enjoy the consideration advanced by the other without being under the necessity of paying something therefor, or so as to give him an option of determining whether the contract should ever be performed on his part, unless the language chosen renders such construction imperative.
    [Ed. Note.—For other cases, see Contracts, Cent. Dig. § 735; Dec. Dig. § 154.*]

3. CONTRACTS (§ 212*)—SUBJECT-MATTER—PAYMENT FOR RELEASE.
    Defendants' testator by a writing addressed to attorneys for plaintiff promised that, if they would procure from plaintiff a general release of all claims against the promisor, he would pay them for plaintiff whatever sum he might realize on a sale of certain property over and above $690,000, but only to the extent of $25,000, and made such promise binding on his executors. Plaintiff executed and delivered his general release which was accepted by testator in 1903, and although the property was salable at a higher figure than that fixed by the writing,. no effort whatever was made to sell it, but it was gratuitously conveyed to testator's wife, who refused advantageous offers for it and showed an intention to keep it, and the executors taking the property in 1909 in trust with a power of sale made no attempt to sell it. *Held*, in an action for

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

137 N.Y.S.—24

breach, that the executory contract imported an obligation to sell within a reasonable time, after which the agreement to pay became absolute.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 944–956; Dec. Dig. § 212.*]

Appeal from Trial Term, Nassau County.

Action by Henrietta Simon against Julius Etgen and others, as executors, etc., of William H. Burgess, deceased. From a judgment of the Supreme Court entered in the office of the clerk of the county of Nassau on the 7th day of December, 1911, dismissing the complaint after a trial at the Nassau county trial term, plaintiff appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and HIRSCHBERG, THOMAS, CARR, and WOODWARD, JJ.

Henry L. Scheuerman, of New York City (Harry F. Mela, of New York City, on the brief), for appellant.

Lewis H. Freedman, of New York City (Albert Stickney and Donald C. Muhleman, both of New York City, on the brief), for respondents.

HIRSCHBERG, J. The action is at law to recover damages for the breach of an executory contract relating to the sale of real estate; the claim having been assigned to the plaintiff by Ferdinand H. Mela.

The defendants' testator, William H. Burgess, wrote the following letter to his attorneys, Messrs. Rose & Putzel, on the day of its date:

"New York, July 15/1903.

"Messrs. Rose & Putzel—

"Gentlemen: If you will procure a general release executed to me by Ferdinand H. Mela of any and every claim that he may allege that he has against me, I will agree to pay to you for his account whatever sum I may realize on the sale of the Coronet, 58th Street and Sixth Avenue, over and above six hundred and ninety thousand dollars, but only to the extent, however, of twenty-five thousand dollars, so that in no event, shall he receive from me more than twenty-five thousand dollars. In speaking of six hundred and ninety thousand dollars, I include the present mortgages of all kinds affecting the property. This is intended to bind me and my executors. Very truly yours, W. H. Burgess."

Upon the receipt of the letter, Rose & Putzel sent for plaintiff's assignor, Ferdinand H. Mela, and he at once executed and delivered to them a general release in favor of Burgess. Ever since accepting that release in 1903, Burgess, and since his death in 1909 the defendants, his executors, have refused to sell the Coronet. The Coronet is a valuable apartment house in the borough of Manhattan, and since the acceptance of said release by Burgess has been salable at from $725,000 to $775,000, and has produced for Burgess or his estate a large net annual income. After accepting the release Burgess made no effort whatever to sell the property. On the contrary, he conveyed it to his wife gratuitously, and she refused advantageous offers for its purchase, and manifested an intention to keep the property. Since his death his executors, to whom the property was devised by him in trust with a power of sale, have made no attempt to sell it. They

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

have now petitioned for their discharge. In 1910 the plaintiff brought an action in equity, alleging these facts, and asking to have it adjudged that she had a lien upon the Coronet to the extent of $25,000. The complaint in that action was dismissed by the First Department of this court for want of equity, but without prejudice to an action at law for relief with respect to the same subject-matter. See Simon v. Burgess, 146 App. Div. 37, 130 N. Y. Supp. 642.

This action has since been instituted to recover damages for the alleged breach of contract by Burgess and the defendants in refusing to sell the Coronet within a reasonable time. At the conclusion of the plaintiff's evidence, the learned Trial Term dismissed the complaint solely on the ground that the facts proven did not constitute a cause of action at law, and cited as its authority for that decision the cases of Lorillard v. Silver, 36 N. Y. 578, more fully reported in 3 Trans. App. 146, and Murray v. Baker, 6 Hun, 264. Although the question presented is by no means free from doubt, I think a contrary conclusion may be reached. In Lorillard v. Silver, supra, it appeared that the purchaser of land agreed with the seller to pay an additional consideration of $500 upon a contingency expressed in these words:

"In case I [i. e., the purchaser] realize thirty-five hundred dollars for said land, or any other sum between three thousand and thirty-five hundred that I may sell said land for, less the interest on said purchase, after six months, and to the time I may dispose of the same."

The evidence established the fact that the purchaser, the defendant, had refused an offer of $4,500 for the property, and that, after such refusal, the property had depreciated in value, so that it was doubtful whether it could be sold for the original purchase price of $2,500. What the Court of Appeals held in that case was that under the facts found by the referee, before whom the case had been tried, the defendant purchaser was not bound as matter of law to accept the offer of $4,500. See Jones v. Kent, 80 N. Y. 585, 590. Two opinions were written in the case, one by Judge Hunt, to the effect that the contract did not import an obligation on defendant's part to sell, and one by Judge Grover, to the effect that the contract did import an obligation upon the defendant's part to sell within a reasonable time, but that the defendant was not obliged to accept the first offer. Two of the judges dissented from the judgment of the court, and the rest concurred, but the grounds of their concurrence do not expressly appear.

In Murray v. Baker, supra, the plaintiff did certain flagging for the defendant in front of eight houses owned by the latter, under a written agreement which stated that the plaintiff would wait for payment "until Baker" (the defendant) "sells some of the houses for cash, and then, when sold, I want my bill of flagging paid." On the trial it appeared that the defendant had sold one house for soap and another for jewelry, and still owned the rest. The court held that the plaintiff could not recover the amount of his bill; the sale of some of the houses for cash being a condition precedent to the payment for the flagging. This decision seems to have been largely based upon Judge Hunt's opinion in Lorillard v. Silver, supra.

The contract in the case at bar I think fairly imports an obligation on the part of the defendant's testator to sell the Coronet within a reasonable time, and the facts disclosed by the records before us are distinguishable from the facts disclosed in the Lorillard and Murray Cases. In neither of those cases was there any evidence such as the record in the case at bar contains, establishing a persistent neglect to sell continuing for a long period of time during which the property could have been sold for a profit. In the Lorillard Case only one offer was refused, after which the property depreciated in value; and in the Murray Case the record on appeal shows that the defendant had diligently endeavored to sell the houses for cash, but had been unable to do so. Moreover, the language of the contract in the Lorillard and Murray Cases differs materially from the language employed in the case at bar. In the Lorillard Case the money was to be paid only in the event that the defendant "may sell said land," and in the Murray Case nothing was due "until Baker sells some of the houses for cash." In the case at bar the plaintiff's assignor was to be paid an ascertainable amount from whatever sum the defendants' testator might realize "on the sale" of the property. Thus, while the amount that might be realized was uncertain, the phrase, "on the sale," shows that the parties definitely contemplated "the sale" of the property. On the other hand, in the Lorillard Case, the money was to be paid from the proceeds realized at such time as the defendant "may dispose of" the land; and in the Murray Case it was not payable "until" the houses should be sold for a certain commodity, viz., "cash." In those cases the sale was an uncertainty. In the case at bar it seems to have been definitely contemplated and provided for.

[1] The intention to sell is a reasonable implication; and, while it might have been more explicitly expressed, yet, as the language of the contract was chosen by the defendants' testator, any ambiguity must be construed against them. See Industrial & General Trust, Ltd., v. Tod, 180 N. Y. 215, 235, 73 N. E. 7.

[2] The construction contended for by the defendants would allow them to enjoy the consideration advanced to Burgess without being under the necessity of paying anything therefor. It would allow a party who had received a valuable consideration under a contract the option of determining whether the contract should ever be performed on his part. Such construction should not be adopted, unless rendered imperative by the language chosen. See Russell v. Allerton, 108 N. Y. 288, 15 N. E. 391, and Noyes v. Barnard, 63 Fed. 782, 787, 788, 11 C. C. A. 424.

[3] That a contract such as that in the case at bar imports an obligation to sell within a reasonable time seems a construction consonant with the weight of authority in this and other jurisdictions. In Jones v. Kent's Administrators, etc., 80 N. Y. 585, the Court of Appeals construed an agreement reading as follows:

"Received of J. W. Jones by agreement, one thousand shares of St. Joe Lead Stock for which I have paid him $3,000. The understanding is that I am to give said Jones one-half of whatever price the same is sold for, when sold over and above that sum.

"Dated New York, June 19, 1866.          E. Rockwell."

The court held that the contract imported an obligation to sell the stock. In Mogulewsky v. Rohrig, 104 App. Div. 147, 93 N. Y. Supp. 590, it appeared that the last payment was to be made on a building contract when a permanent loan had been secured on the building. This court held that the fact that no permanent loan had been obtained was no defense to an action to recover the last payment, when it appeared that failure to obtain said loan was due to the fault of the owner in permitting the sale of the premises under foreclosure.

In Edmunds v. Wilkinson, 7 Carr. & P. 387, plaintiff sued in assumpsit on an agreement reading as follows:

"In consideration of your signing the consent to the supersedeas of my commission, I undertake, in the event of my recovering the Standish property, to liquidate your claim against me, amounting to £130 13s 3d, although I am not legally liable to the same."

The court held that the agreement implied a promise to take some proceedings for the recovery of the Standish property. In Noyes v. Barnard, supra, the plaintiff and another entered into an agreement with the defendants to purchase certain timber lands for the defendants, and to receive for their services a certain percentage of the profits arising out of the sale of the lands or the timber. The lands were purchased, and the defendants thereafter refused an offer made by a responsible person to purchase the lands at a price that would have yielded about 300 per cent. profit. It was held that the plaintiff could maintain an action at law to recover his share of the profits based on such offer, on the ground that there was an implied obligation to sell in a reasonable time and at a reasonable price.

In Nunez v. Dautel, 19 Wall. 560, 22 L. Ed. 161, the Supreme Court of the United States held that an agreement to pay a certain sum of money for services "as soon as the crop can be sold or the money raised from any other source" did not mean that if the crop should be destroyed or never sold, and that, if the parties promising could not procure the money from any other source, the debt should never be paid. The contract was construed as a promise to pay in either mode specified in the agreement, or failing payment by either mode, as a contract to pay absolutely within a reasonable time. In Hicks v. Shouse, 17 B. Mon. (Ky.) 483, the contract was to pay $500 "so soon as I sell my house and lot in the city of Lexington and until said sale is made I promise to pay eight per cent. interest on said sum." The court held that the $500 was due in a reasonable time. In Sears v. Wright, 24 Me. 278, a note was made payable "from the avails of logs bought of M. M., when there is a sale made." The court held that the note was not payable on a contingency, but absolutely after a reasonable time to sell the logs had elapsed. In Williston v. Perkins, 51 Cal. 554, the builder of a vessel agreed to pay for work done on it when it was sold. The court held that he had only a reasonable time within which to sell it, after which the agreement to pay became absolute. To like effect in principle are Dana v. Mason, 4 Vt. 368; Vermont,

Marble Co. v. Mann, 36 Vt. 697; Black v. Bachelder, 120 Mass. 171; and McIntyre v. Belcher, 14 C. B. [N. S.] 654.

The judgment should be reversed.

Judgment reversed and new trial granted, costs to abide the event. All concur.