In the Matter of the Application to Compel an Accounting in the Estate of LOUISA VARET, Deceased.

In the Matter of the Judicial Settlement of the Account of Proceedings of THOMAS L. FEITNER, as Executor, etc., of LOUISA VARET, Deceased.

In the Matter of the Final Judicial Settlement of the Account of Proceedings of THOMAS L. FEITNER, as Executor, etc., of LOUISA VARET, Deceased.

In the Matter of the Judicial Settlement of the Supplemental Account to the Final Account of Proceedings of THOMAS L. FEITNER, as Executor of and Trustee under the Last Will and Testament of LOUISA VARET, Deceased.

ELVINA L. VARET and Others, Appellants; THOMAS L. FEITNER, as Executor, etc., of LOUISA VARET, Deceased, Respondent.

First Department, February 1, 1918.

Executors and administrators — right to reasonable time within which to convert assets into cash — provision of will directing sale of assets construed.

The general rule in cases of administration is that an executor or administrator is entitled to take a reasonable time within which to convert the assets of an estate into cash, and what is a reasonable time depends in each case upon the circumstances. If such executor or administrator acts in good faith and exercises his best judgment he will not ordinarily be held personally responsible when it appears in the light of after events that he would have displayed better judgment or have produced a more favorable result if he had sold earlier.

Notwithstanding the use in a will of the following words, " I do order and direct my executor hereinafter named, as soon as may be after my decease," to sell and convert into money all the real and personal estate, the discretion of the executor as to the time for selling securities remained unfettered, provided he acted in good faith, without neglect and in the honest exercise of his best judgment, and his accounts should not be surcharged with a shrinkage claimed to have resulted from a delay in selling securities.

PAGE and SHEARN, JJ., dissented, with opinion.

APPEAL by Elvina L. Varet and others from a decree of the Surrogate's Court of the county of New York, entered in the office of the clerk of said Surrogate's Court on the 27th day of January, 1917, settling the accounts in these proceedings.

*Carroll Berry,* for the appellants Elvina L. Varet and another.

*Gordon Gordon,* for the appellants Emily R. Terriberry and others.

*Daniel J. Mooney* of counsel [*Joseph A. Reynolds,* attorney], for the respondent.

SCOTT, J.:

This appeal is taken by certain legatees named in the will of Louisa Varet, deceased, from a decree judicially settling the accounts of the executor named in said will, the particular objection made to the decree being that the surrogate refused to surcharge the accounts of said executor with the difference between the inventoried value of certain securities included in the estate, and the prices at which these securities were sold by the executor.

Louisa Varet died on August 5, 1913, leaving a last will and testament which was admitted to probate on September 18, 1913, and letters testamentary issued to the executor named therein and who is respondent here. The estate was a considerable one and consisted in part of the securities as to which the loss referred to was suffered. These securities came into the executor's hands on September 30, 1913, and on October 22, 1913, an inventory of the estate was filed in the surrogate's office, and on the same day affidavits and schedules were filed with the tax appraiser. Prior to January 1, 1914, securities similar to those in question were dealt in upon the New York Stock Exchange and in the open market at prices approximating those at which the securities of the estate were inventoried, sometimes a little higher and more often a little lower. After January 1, 1914, prices steadily declined. The executor, who was a lawyer, and not engaged in any business having to do with dealings in such securities, consulted from time to time, as occasion offered, with gentlemen conversant with such matters and whose opinions as to the future course of prices were worthy of consideration, and as a result of such consultation he formed the opinion that better prices could probably be obtained in the autumn of 1914 than in the spring of that year. He did, however,

First Department, February, 1918.          [Vol. 181.

in March and April, 1914, sell some of the securities, yielding in this regard to the importunities of counsel for some of the legatees. Others he retained for sale in the autumn. In the meantime, however, the great war began, the Stock Exchange closed its doors, and prices of securities of all kinds depreciated seriously. The result was that when all the securities had been disposed of the prices realized showed a shrinkage of several thousand dollars below the inventoried values. For the amount of this shrinkage the appellants seek to have the executor charged personally.

There is no claim that the executor acted in bad faith, or that he reaped or could reap any personal advantage from his delay in disposing of the securities. It is specifically found: " That the executor exercised good faith in the administration of this estate," and this finding is not challenged by the appellants. Nor is there any basis that we can find for a claim that he neglected the duty with which he was charged. So far as appears he kept constantly in mind the fact that it was a part of his duty to form a judgment as to the proper time to dispose of the securities, and, if he delayed too long, it was due to an honest error of judgment, and to circumstances which no man could have foreseen. The general rule in cases of administrators is that an executor or administrator is entitled to take a reasonable time within which to convert the assets of an estate into cash, and what is a reasonable time depends in each case upon the circumstances surrounding the particular case, and if such an executor or administrator acts in good faith and exercises his best judgment he will not ordinarily be held personally responsible if it appears, in the light of after events, that he would have displayed better judgment, or have produced a more favorable result, if he had sold earlier. It was said in *Matter of Weston* (91 N. Y. 502) that " Where no modifying facts are shown to shorten or lengthen the reasonable time, the period of eighteen months may serve as a just standard," although it was also held that " While such period furnishes a convenient guide where no special circumstances exist, it must, after all, not be taken as a fixed or arbitrary standard. The test must remain, the diligence and prudence of prudent and intelligent men in the management of their own affairs." There

is nothing in the present case to show that the executor failed to act up to this test. He undoubtedly acted as he did because he sincerely believed that in so doing he was acting in the best interests of the estate, and, after all, it was to his judgment and discretion that the testatrix had deliberately committed the management of her estate after her death.

The claim of the appellants is, however, and upon this their appeal mainly rests, that the language of the will was such as to impose an obligation upon the executor to make an immediate sale of the securities, irrespective of the condition of the market, and without exercising any judgment or discretion as to whether or not it would be advantageous to the estate so to do. The following is the language thus relied upon: " It is my will and I do order and direct my executor hereinafter named, *as soon as may be after my decease* to sell, either at public or private sale and convert into money all the real and personal property and estate of which I shall die seized and possessed." Insistence is laid upon the words " as soon as may be after my decease," which are deemed by the appellants to be equivalent to a direction to make a sale as soon as it *can be* made, that is, as soon as the securities come into the hands of the executor and he is in a position to give title to a purchaser, or within a very brief time thereafter. Such a construction of the language used is not in accordance with the authorities. The words " as soon as may be," or words of similar import, have frequently been judicially construed, and have been held to mean " as soon as *reasonably* may be." The direction to sell and convert into cash is undoubtedly peremptory, but the time of sale is still left to the reasonable discretion of the executor. As was said in the case from which we have already quoted: " Even where there is a direction to sell, reasonable time must be given, and what that is must be determined in each case by its own surroundings." (*Matter of Weston, supra*). In *Adams* v. *Foster* (59 Mass. 156) it was said, respecting a contract for the sale of a vessel: " The words of the covenant ' forthwith, as soon as may be,' ' for the largest sum that we can reasonably obtain' allowed a reasonable latitude, as to the time and manner of making the sale," and to the same

effect is *Bentley* v. *Ward* (116 Mass. 333). Even the words " as soon as may be," which in a sense are more restrictive than those relied upon by appellants, have been construed to mean within a reasonable time. (*Nunez* v. *Dautel*, 19 Wall. 560; *Simon* v. *Etgen*, 152 App. Div. 404; *Waddell* v. *Reddick*, 24 N. C. [2 Ire. L.] 424.) So, also, has been construed the phrase " as soon as possible." (*Arthur* v. *Wright*, 57 Hun, 22; affd., 132 N. Y. 547; *McNally* v. *Phœnix Ins. Co.*, 137 id. 390.) And also the words " as soon as they conveniently can." (*Philadelphia, W. & B. R. R. Co.* v. *Williams*, 54 Penn. St. 103; *Van Rensselaer* v. *Van Rensselaer*, 113 N. Y. 207; *Matter of Hodgman*, 140 id. 421.) In general where an absolute power of sale is given to an executor, the addition of words suggesting a time for its exercise does not limit the discretion of the executor. (*Robert* v. *Corning*, 89 N. Y. 225; *Deegan* v. *Wade*, 144 id. 573; *Chanler* v. *N. Y. El. R. R. Co.*, 34 App. Div. 305.) In the case last cited this court said (p. 307): " It is well settled that where an absolute power of sale is conferred upon an executor, the addition of words suggesting a time for its exercise, or indicating the testator's desire in that regard, do not restrain or limit the action of the executor."

Following this unbroken line of authorities we are constrained to hold that the words relied upon by the appellants are not susceptible of the peremptory construction sought to be applied to them, and that notwithstanding the use of these words in the will the discretion of the executor as to the time for selling the securities remained unfettered, provided as was the case here that he acted in good faith, without neglect and in the honest exercise of his best judgment.

For these reasons we think that the surrogate rightly refused to surcharge the accounts of the executor and that the decree should be affirmed, with costs to the executor to be paid by the appellants personally.

CLARKE, P. J., and LAUGHLIN, J., concurred; PAGE and SHEARN, JJ., dissented.

PAGE, J. (dissenting):

I cannot accept the opinion of the majority, that as a matter of law, where a will gives an executor power to sell,

it vests a discretion in the executor as to time, which cannot be restrained or limited by the testator. In my opinion such a rule violates two fundamental canons of construction of wills. *First*, that a person has the right by will to dispose of his estate in any way that he desires, qualified only that he shall not contravene some established rule of law or public policy. *Second*, that the intention of the testator, as expressed in the will, must be given effect. Therefore, if the testator desires that his property shall be sold, and the proceeds thereof distributed, he has the right to specify the time, and direct the manner of the sale and distribution. If he desires to leave the time and manner to the discretion of the executor, it is competent for him to do so by such words as will aptly express such desire, or to simply give the power, without limiting words, in which case the law will imply that the power is to be exercised within a reasonable time. This, I understand to be the settled law of this State, nor am I aware of any decision to the contrary. While the quotation in the majority opinion from the case of *Chanler* v. *N. Y. El. R. R. Co.* (34 App. Div. 305, 307) would seem to give some support for the position there assumed, when those words are read in connection with the context and in consideration of the question determined, it will be seen that it gives no support to the proposition. That was the usual action of an abutting owner for an injunction and damages against the defendant for maintaining and operating an elevated railroad in the street. The plaintiff acquired the property from an executor who sold by virtue of the following clause of the will: " And upon the further trust to sell and dispose of said real estate as soon as he can sell and dispose of the same to advantage and best interest of my estate, but it is my desire that the real estate remain unsold until the expiration of five years after my decease, unless in the opinion of my executor * * * my estate will be benefited by an earlier sale." The sale was made in four years after the testatrix's death. It was claimed that the power of sale was void, upon the theory that the power of alienation was illegally suspended, being for a period not measured by lives in being. The court said: " It is well settled that where an absolute power of sale is conferred upon an executor, the addition of words

First Department, February, 1918.     [Vol. 181.

suggesting a time for its exercise, or indicating the testator's desire in that regard, do not restrain or limit the action of the executor. (*Deegan* v. *Wade*, 144 N. Y. 573; *Robert* v. *Corning*, 89 id. 225; *Henderson* v. *Henderson*, 113 id. 1.) This rule has been applied to words much more peremptory than those in the case at bar. (*Deegan* v. *Wade*, *supra*.) The fact that an executor may require, in order to make a sale, a period of time not measured by lives in being, does not suspend the power of alienation; and in such a case a trust to receive the rents and profits pending sale for the benefit of beneficiaries is not illegal. (*Robert* v. *Corning*, *supra*.)" The question was a question of title between parties who were not concerned with the execution of the power of sale, otherwise than with the validity of the power to sell. It was not held that the testator had no right to limit or prescribe the time to sell, but that such a limitation as was imposed did not invalidate the power, as being against the statute of perpetuities. Furthermore, the will in that case gave discretionary power to the executor to sell " as soon as he can sell and dispose of the same to advantage and best interest of my estate," thereby vesting a wide discretion in the executor; that it should be held for five years is the expression of a mere desire which was also expressly limited by the same discretion in the executor.

Two of the above cases cited are also cited in the majority opinion in the instant case. *Robert* v. *Corning* (*supra*) was an action to construe a will, which directed the executors to sell certain real estate " at public sale in the city of New York, notice thereof having first been given of the time and place of sale for three successive weeks in four of the daily newspapers of the said city." The court said (p. 235): " Where the trustee is empowered to sell the land, without restriction as to time, the power of alienation is not suspended, although the alienation in fact may be postponed by the non-action of the trustee, or in consequence of a discretion reposed in him by the creator of the trust. The statute of perpetuities is pointed only to the suspension of the *power* of alienation, and not at all to the time of its actual exercise, and when a trust for sale and distribution is made, without restriction as to time, and the trustees are empowered to

receive the rents and profits, pending the sale for the benefit of beneficiaries, the fact that the interest of the beneficiaries is inalienable by statute, during the existence of the trust, does not suspend the power of alienation, for the reason that the trustees are persons in being, who can, at any time, convey an absolute fee in possession."

The opinion, in so far as quoted above, was an authority upon the proposition of law that was before the court in *Chanler* v. *N. Y. El. R. R. Co.* (*supra*), which is in no manner involved in the instant case. The court further considered the requirement that the sale should be public and on specified notice. The right of the testator to make such requirements does not seem to have been questioned, those facts being presented as an additional suspension of the power of alienation, which the court held was untenable. The court did say, however (p. 238): "The direction that the real estate in this State should be sold at public sale on three weeks' notice, was a prudential arrangement to insure a fair sale and prevent a sacrifice of the property, and in no proper sense suspended the power of alienation. * * * The act of 1837 (Chap. 460, § 43) provides that sales of real estate made by executors in pursuance of an authority given by any last will, unless otherwise directed therein, may be public or private. A public sale implies prior notice. The direction that the sale should be public was clearly valid, and it can make no difference upon the point now in question, whether the length of the notice (if reasonable) is prescribed by the testator or is left to the judgment of the executors."

In *Deegan* v. *Wade* (*supra*) the contention was that the provision of the will directing the executor to sell certain real estate " at some convenient day and place during the spring months of 1891 " was void as suspending the power of alienation for a period not measured by lives. The court said (p. 576): " It is obvious that the direction as to the time to sell was advisory and * * * was intended to facilitate the sale and not to limit or restrain the power of absolute disposition. The executor had the right to the ordinary period of administration, and this direction amounted to nothing more than a request that the sale be made at an earlier day." It appears clearly, in my opinion, that these cases are authorities for

First Department, February, 1918.       [Vol. 181.

the proposition that an absolute power of sale given to executors or trustees is not rendered void as suspending the power of alienation for a period not measured by lives, either by the non-action of the executor or trustee, by reason of the exercise of their own discretion or out of consideration for a request or an indication of the desire of the testator, and have no bearing upon the questions under consideration in the instant case.

The language used by the testatrix in the instant case is not a mere request or an expression of a desire. It is a mandatory requirement. It is as follows: " It is my will and I do order and direct my executor hereinafter named, as soon as may be after my decease to sell, either at public or private sale and convert into money all the real and personal property and estate of which I shall die seized and possessed." In my opinion this clause is mandatory, not only that the executor shall sell, but as to time of sale, which is to be " as soon as may be " after the decease of the testatrix. There are no words in the clause that imply discretion as to time of sale, such as " as soon as convenient," or when " he shall deem it advantageous " or " for the best interest of the estate." The majority of the court hold that these words add nothing, and apply the rule that would be applicable if these words were entirely eliminated. In construing a will, effect must be given to every word used by the testator. It is not to be presumed that words were idly used, and if in the ordinary use of language they have a well-defined meaning the presumption is that the testator intended that to be done which the language used fairly imports.

The effect of the words " as soon as may be," must be ascertained. The word "may " means "to have power; have ability; be able;" have opportunity. (Century Dictionary.) Therefore, used in their ordinary sense, the words " sell as soon as may be after my decease " mean as soon after my decease as the executor has the power, ability and opportunity to sell, he shall sell. While I do not find that this exact phrase has been judicially construed in this State, the words "may be" as used in the Constitution have been given the meaning above stated. The Legislature is required, after a State census, to so alter the Senate districts " that each

Senate district shall contain as nearly as may be an equal number of inhabitants." (Const. art. 3, § 4.) It was held that this provision must be so construed " as to require that the Legislature in dividing the State into Senate districts make as close an approximation to exactness in number of inhabitants as reasonably possible in view of the other constitutional provisions, and that such approximation is the limit of legislative discretion." (*Matter of Sherrill* v. *O'Brien*, 188 N. Y. 185, 207.) Thus giving the words " as may be " to be as they are able to do under the circumstances. I have carefully examined all the cases cited in the majority opinion. A review of them might be valuable and will materially aid in formulating the rule to be applied in the case at bar. *Bentley* v. *Ward* (116 Mass. 333) deals with a statute relating to court practice requiring exceptions to be filed in the Supreme Court " as soon as may be " after the question of law was reserved and made a matter of record in the Superior Court. The court held that this prescribed no definite time, that the circumstances should govern, and said, " we are of opinion that in any case in which no special circumstances are shown, exceptions not entered in this court within a month after the final adjournment of the term at which they were allowed cannot be deemed to be entered ' as soon as may be.' "

In *Nunez* v. *Dautel* (19 Wall. 560), an agreement to pay a sum of money " as soon as the crop can be sold or the money raised from any other source," the court said: " The stipulations secured to the defendants a reasonable amount of time within which to procure in one mode or the other the means necessary to meet the liability. Upon the occurrence of either of the events named, or the lapse of such time, the debt became due."

In *Simon* v. *Etgen* (152 App. Div. 399) the agreement was, on the receipt of a general release, to pay whatever sum might be realized on a sale of certain property over and above a certain amount, but only to the extent of a specified sum, which was held to create an obligation to sell the property within a reasonable time after receiving the release.

The case of *Waddell* v. *Reddick* (24 N. C. [2 Ire. L.] 424)

construed a contract by a planter to deliver cotton grown on his plantation " as soon as it can be picked out and shipped." It was held that he was not thereby restricted to the shortest possible time in which, by any means or upon any terms, he could convey the cotton to a seaport, but that he was only bound to employ the usual means of transportation, and, therefore, had a right to wait a reasonable time to avail himself of that mode. It appeared that he had availed himself of the usual mode at the earliest possible time and had paid an extra freight charge to expedite the shipment.

In *Arthur* v. *Wright* (57 Hun, 22; affd., 132 N. Y. 547) the contract, dated May twenty-fifth, was for the sale of wheat in Duluth to be delivered in Buffalo as soon as possible. The court said: " It was the duty of the plaintiffs, under this contract to obtain the wheat and ship the same from Duluth with all reasonable dispatch, and to deliver the same in Buffalo in the usual course of lake navigation. * * * The known difficulty of procuring transportation could furnish no excuse for delay. The defendants were entitled to an exact performance by the plaintiffs of their contract to ship promptly and to deliver within a reasonable time. Failing in this, they have no ground of complaint against the defendants for refusal to accept the wheat on the eighteenth day of June."

In *Tobias* v. *Lissberger* (105 N. Y. 404) old iron was sold " for prompt shipment by sail from Europe, and for delivery on dock at the port of New York." On the next day after the making of the contract, iron answering the description was shipped on board a vessel lying in a port upon a river in Germany which was then unnavigable by reason of being frozen over. On the first day possible the ship sailed, and after a voyage of ordinary length arrived at the port of New York. Held, not a compliance with the contract; the iron could have been shipped from any port in Europe and the defendants were entitled to such timely delivery as would follow an effective shipment.

In *McNally* v. *Phœnix Ins. Co.* (137 N. Y. 389) the policy provided that a sworn statement of proofs of loss should be furnished as soon as possible after the fire. Held, " The plaintiffs were doubtless bound to furnish them within a

reasonable time, and no claim was or can be made that a delay of ten days was, as matter of law, under the circumstances, unreasonable."

*Philadelphia, Wilmington & Baltimore Railroad Co. v. Williams* (54 Penn. St. 103) was an action by Williams for trespass alleging that the company by the construction of a turnout from their main track to an engine house obstructed his right of way in an alley and a watercourse, claiming that the company had no right to build the turnout as the charter authorized it " as soon as they conveniently can, to locate and construct a railroad of one or more tracks " and " to make, construct and erect * * * all the works and appendages necessary for the convenience of the said company for the use of said railroad." The court held: " The expression ' as soon as they can conveniently locate and construct ' is not a limitation upon the power to compel the company to exercise its whole authority in the very beginning, when the demands of business are few. It would be an unreasonable construction of its charter to require provision to be made for all the unknown wants of the future. The increase in trade and business, and the changes taking place, often require new and increased facilities."

In *Van Rensselaer v. Van Rensselaer* (113 N. Y. 207) the will provided: " I hereby give and bequeath to my sister Elizabeth the sum of ten thousand dollars, to be paid by my executors when it shall be convenient for them, without regard to the time fixed by law, out of the moneys derived from the sale of the Van Schaick farm, * * * or otherwise if it shall seem best to them." The court said: " He [the testator] knew that the amount and time of the sales would be uncertain, and, lest for that reason the general estate might be drawn upon to pay Elizabeth, he made her legacy payable at the convenience of the executor. But that convenience respected the situation of the estate, and not the choice or arbitrary will of the executor; and when money enough was realized from the sales to pay Elizabeth from that designated source, there was no excuse for further delay, the legacy became due and payable, and the executor who misappropriated the money, and the legatee who wrongfully accepted and retained it, became alike liable for its payment."

The case of *Matter of Hodgman* (140 N. Y. 421) throws no light upon the instant case. The will provided: "I desire the legacies to my wife paid as soon after my death as convenient to my executors." The wife was one of the executors and accepted the principal of the legacies without demur. Ten years later she demanded interest for delayed payment. The court held that there was nothing to show that the payment had been unduly delayed and that she was estopped from raising the question.

The case of *Adams* v. *Foster* (59 Mass. 156) is very illuminating. The action was brought to recover on an agreement that the defendants would " forthwith as soon as may be " sell a schooner " for the largest sum that they could reasonably obtain for her " and pay the proceeds to the plaintiff. At the time of the making of the agreement the schooner was at sea. She arrived two days later and two days thereafter sailed for Yarmouth for the purpose of obtaining a new register, the old one having been lost. Within eight or nine days thereafter she was wrecked. The Supreme Court approved of the charge of the trial judge " That the defendants were to have the time necessary to sell the vessel; that they were not to sell her for a nominal but for a reasonable sum; that *they were to take measures, immediately to effect a sale and were to sell her within such time as a man diligent in business* could have sold her in the manner and for the object specified in the contract; that if her registry was lost, and a new registry would be necessary, before the vessel could be sold, they were to attend to that, and were to have *the time requisite to perform all the acts necessary to complete the sale and vest the title;* and that if the jury were satisfied that the defendants, *acting as men diligent in business, could not have effected the sale* before she was lost, they would not be liable." (Italics are mine.) In my opinion the underlying principles in these cases give the rules that should be applied in the instant case. The executor was required to immediately do the things necessary to enable him to complete the sale and vest the title in the purchaser, and when he had the ability to do this to offer the stocks for sale. There was a ready market for them as the larger proportion of the securities were daily dealt in upon the Stock Exchange, and the remainder had a ready market

in auction sales. The market for eight months after the executor qualified was normal and for at least sixty days thereafter prices could have been realized in excess of the inventoried value. The executor testified that he thought the securities had a higher value than the then market price, and that he talked the general situation over with financiers and others familiar with market conditions and came to the conclusion that the securities would command higher prices in the fall of 1914.

The residuary legatees filed objections to the account, and this appeal is concerned with the claim that is made by the residuary legatees that the loss to the estate occasioned by the delay in the sale of the securities should be charged against the executor and that the executor's account should be surcharged in the sum of $8,100.90. The sales of the securities were made within eighteen months of the death of the testatrix. The residuary legatees claim, however, that as the will required that the executor should sell " as soon as may be after my decease," the executor's time was limited thereby in which to sell and that he should have sold within sixty days. There is, and there can be, no definite period of time within which an executor, who is directed to convert an estate into money, must sell the assets. Each case must be determined on its own facts, and the test to be applied in the absence of a mandatory direction to sell is, given the facts and conditions of the case, did the executor act with the diligence and prudence of prudent and intelligent men in the management of their own affairs? If he did, and loss ensues, he cannot be held liable. If he did not, then he must make good to the estate a resulting loss. There has been a disposition of the courts to recognize, in the period allowed for administration of the estate before an executor can be compelled to account, as fixing a reasonable period for the exercise of the power of sale. But " In this State, at all events, there is no arbitrary standard. The executor, here, cannot be compelled to account until after eighteen months; and yet it may be his duty to sell even earlier than that, or to wait even longer, according to the circumstances of particular cases, and the exigencies which exist. Where no modifying facts are shown to shorten or lengthen the reason-

First Department, February, 1918.      [Vol. 181.

able time, the period of eighteen months may serve as a just standard." (*Matter of Weston*, 91 N. Y. 502, 510.)

In the case at bar there was a very potent modifying fact to shorten the time, in the will of the testatrix in the execution of which her intention has controlling effect. The direction was for the executor to sell " as soon as may be after my decease." This phrase recognizes that some delay will be necessary to enable the executor to give title, and incident upon transfer tax and other proceedings, but the requirement is mandatory that when the executor is in position to do so he must sell in the absence of extraordinary conditions. It may be that a prudent business man dealing with his own securities in his possession and being under no obligation to sell, would have been justified by such considerations as here appear in holding the securities until the fall. But the executor was not in that position. The obligation on him was to sell as soon as he was able. The test is, did he discharge that obligation with the diligence that a prudent business man would had he been intrusted with the securities of another under similar instructions. In my opinion he did not, and, therefore, is liable to the estate for the loss that resulted, determined by the amount that the executor could have realized if he had sold promptly, which may be taken at the inventory value, less the amount actually realized, which was proved to be $8,100.90, with which amount his account should be surcharged.

SHEARN, J., concurred.

Decree affirmed, with costs to executor to be paid by appellants personally.